Julia E. HART

v.

UNITED STATES.

No. 330–58.

United States Court of Claims.

Jan. 20, 1960.

Gerald B. Greenwald and Becker & Maguire, Washington, D. C., Blumenthal & Blumenthal, New York City, on the brief, for plaintiff.

Laurence H. Axman, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

This action presents two questions to the court. First, was plaintiff denied a personal hearing at the agency level on the charges against her in violation of her rights under section 14 of the Veterans' Preference Act of 1944,[1] and, also, was the action of her superiors in placing her on involuntary annual leave a violation of her rights under section 6 of the Lloyd-La Follette Act of 1912, as amended?[2]

In substance, the facts are these: plaintiff, a preference eligible, had been employed for more than ten years as a stenographer in the New York office of the Antitrust Division, Department of Justice. In July 1956, she became involved in a dispute with an attorney in the office concerning the priorities assigned certain work projects. She was accused of having refused to perform work which it was properly her duty to perform. On July 11, 1956, the plaintiff met with the acting head of the office, her administrative supervisor, and an attorney assigned to her staff section, in an attempt to work out the problem and to assure that there would be no future misunderstanding about plaintiff's duties. Failing to resolve matters satisfactorily, the conference was terminated and plaintiff was informed that she was being placed on annual leave effective the following day.

1. 5 U.S.C.A. § 863.

2. 5 U.S.C.A. § 652(a).

Plaintiff at that time had not had any charges served on her but she had been told that they might be forthcoming. She was continued on annual leave with no further notice until she was instructed to come to work on August 6, 1956. On that day plaintiff again had a conference with the acting head of the office and again no understanding was reached between her and her superiors. She was thereupon restored to her duties and served with a letter of charges signed by the Assistant Attorney General, Antitrust Division, and dated August 3, proposing her discharge by the Department of Justice. She was given five days in which to reply to the charges, which period was extended another five days as a result of her telephonic request to the executive officer of the Antitrust Division in Washington.

On August 14, 1956, plaintiff forwarded her written answer to the charges to the Assistant Attorney General, Antitrust Division and concluded with the statement, "I am ready and anxious to face my accusers at a hearing in this Department or before the Civil Service Commission at any time." Plaintiff was notified by letter dated September 10, 1956, that the charges against her were sustained. She was informed that her employment was being terminated as of the close of business on September 14, 1956, and of her right to appeal to the Civil Service Commission.

Following a hearing before a regional appeals examiner of the Civil Service Commission, a decision was made sustaining the agency and it was ruled that plaintiff's separation had been in full conformity with the Veterans' Preference Act. She appealed to the Board of Appeals and Review alleging, among other things, that she had been improperly suspended. Again the Civil Service Commission found against plaintiff. In a subsequent request for reconsideration, the plaintiff alleged for the first time that she had not been permitted to answer the charges against her personally as guaranteed by the Veterans' Preference Act.[3] This request was denied. Plaintiff thereupon filed her petition in this court.

We held in Washington v. United States, 1957, 147 F.Supp. 284, 137 Ct.Cl. 344, that a veteran sought to be discharged from the classified civil service has the right to personally present his side of the case to the appropriate official of the agency. This right is provided in the following language in section 14 of the Veterans' Preference Act of 1944 (5 U.S.C.A. § 863):

"No permanent or indefinite preference eligible * * * shall be discharged * * * except * * * for reasons given in writing, and the person whose discharge * * * is sought * * * shall be allowed a reasonable time for answering the same *personally and in writing* * * *." [Emphasis supplied.]

But like a great many other legal rights, this congressionally conferred safeguard may be waived. Accordingly, where a civil servant is faced with discharge and is notified of his right of personal appearance at the agency level, he must take such action as will constitute a clear assertion of this right or it will be waived. Vaughn v. United States, 1958, 158 F.Supp. 716, 141 Ct.Cl. 208. We agree that this right of personal appeal at the agency level does not entitle a Federal employee to an adversary type hearing nor does it contemplate confrontation of the witnesses. Deviny v. Campbell, 1952, 90 U.S.App. D.C. 171, 194 F.2d 876.

Plaintiff had the right, then, to answer the letter of charges personally before the proper official within her agency, contingent upon properly asserting that right. Although it appears that there may be a factual dispute as to whether plaintiff was offered such oppor-

---

3. See Long v. United States, this day decided.

tunity, and as to whether she rejected it, counsel for both parties indicated their preference for a determination on the facts as disclosed in the briefs, affidavits, and attached documents. It is the task of the court to decide whether the plaintiff properly and effectively requested such personal interview.

From a reading of the record in this case, it appears that the incidents leading up to plaintiff's removal originated in an unfortunate, but not unique, clash of personalities between two persons who happened to come in close employment contact. Correctly or not, plaintiff believed that she had become a pawn and a scapegoat in an intra-office intrigue involving two attorneys. She had also come to the conclusion that her actions and attitudes had been untruthfully reported to her superiors. At the time she was placed on annual leave in July 1956, plaintiff believed that she had been wronged by more than one person in her office, and that she had been denied the redress and vindication that she deserved.

It appears as a matter of fact that plaintiff was insubordinate and that her conduct justified some type of disciplinary action by the Justice Department. It may be that had we been faced with the decision we would not have meted out such harsh punishment as removal; that, however, is not for this court to determine in this type of case. Moreover, plaintiff bases her claim for recovery on the procedural aspects of the removal alone.

It is only by placing plaintiff's statement about being ready to face her accusers alongside her revealed mental attitude prior to her making of the statement, that its real meaning may be seen.

Plaintiff's feelings that she had been badly treated by certain co-workers and superiors were certainly not assuaged by her being unilaterally placed on leave. We think it only natural for her to have been eager to have her position in the whole affair fully disclosed and recognized as correct rather than the position of those she regarded as her opponents. At that stage of the matter, a public vindication would naturally have served to provide plaintiff with the greatest possible satisfaction. In view of the facts, the most reasonable conclusion as to plaintiff's motive in making her request is that she was anxious to publicly confront her detractors and prove them wrong and herself right. She had no right to such a "hearing" at the agency level and it would only have been at a hearing in review of the agency action that such adversary type procedure was available.

Moreover, the language of her reply to the letter of charges supports such an interpretation. It does not appear to us that she was requesting an opportunity to meet privately with her superior either in the New York office or at the Justice Department level in order to present her side of the story and to attempt to influence him to abandon his contemplated separation action; rather, it appears that the original incident which generated the dispute had become secondary and plaintiff now sought an airing of the subsequent transactions which, she felt, tended to disparage her character and ability.

Miss Hart's statement that she was ready and anxious to face her accusers at any time is far different from the request made in the Washington case that the plaintiff be given "an opportunity to come in to see you [Postmaster] personally, [since] I am certain that I can explain my case more fully." [147 F. Supp. 287.]

In the Washington case the petitioner attempted to avail himself of the statutory device by which he might endeavor to influence the contemplated action of his supervisor by presenting mitigating facts and circumstances in a person-to-person manner. This plaintiff, it appears to us, requested instead a forum in which to erase the criticism directed

at her and to place the blame where she thought it belonged. She was not necessarily making her request in the alternative, i. e., a hearing in the agency *or* before the Civil Service Commission, rather she was asking for *any* forum which could give her the particular type of vindication she sought. This falls short of a clear assertion of her right to a personal interview within the agency on the charges.

It should be noted that in two affidavits filed with the Civil Service Commission in September and October of 1956, plaintiff continued to take the position that she wished to confront her antagonists rather than seek a personal meeting with her supervisor. In the first affidavit she requested that the appeals examiner give her the chance to question "those persons involved in this matter." In the other, she stated that she had read the affidavits submitted by those persons and "desired the opportunity to examine them at a hearing."

It becomes unnecessary, in view of plaintiff's waiver of her statutory right, to determine whether the meeting of July 11, 1956, or of August 6, 1956, or of any other date between plaintiff and agency representatives substantially satisfied the statutory right to answer charges personally in the agency.

■ Directing our attention to the other portion of plaintiff's claim, a civil servant eligible for the benefits of the Veterans' Preference Act may also be entitled to the protection of the Lloyd-La Follette Act if he so elects. The pertinent statutory section [4] provides that no classified civil servant may be removed or suspended without pay until a number of specific steps for his protection have been taken by the agency. The steps include such things as service of notice and a written copy of the charges, a reasonable time in which to reply, and the furnishing of a written decision on the reply. In other words, no protected employee may be separated from the payroll, whether it be by removal or by suspension without pay, unless and until the agency complies with all of the procedural steps set forth in the statute. The plaintiff qualifies for the protection of this act and she has contended from the start that her rights thereunder were denied.

■ While all of the procedural requirements of the Lloyd-La Follette Act may have been complied with prior to plaintiff's removal on September 14, 1956, clearly they had not been satisfied prior to the date on which she was placed on involuntary annual leave, which period of leave extended from July 12, to August 3, 1956. If that action constituted a suspension without pay, her rights under the act were violated. We think there was an illegal suspension for which plaintiff should recover.

It has been held that a preference eligible who is placed on involuntary annual leave during the 30-day advance notice period required by the Veterans' Preference Act is wrongfully deprived of his pay for that period. Kenny v. United States, 1956, 145 F.Supp. 898, 134 Ct.Cl. 442; Taylor v. United States, 1955, 131 Ct.Cl. 387. Although that Act is not before us with respect to this facet of the instant case, we thing an analogous situation is presented. In the Taylor case, the Government *eo instante,* effected a removal of the petitioner from the payroll without providing him with the 30-day advance notice period of the statute. Here the Government effected an immediate suspension of Miss Hart from the payroll without providing her with the procedural steps guaranteed by the Lloyd-La Follette Act. In each case certain legal prerequisites for removing an employee from the payroll were not satisfied.

Plaintiff received compensation during the period of enforced absence, but through the device of charging the check

4. 5 U.S.C.A. § 652(a).

against her annual leave account she was deprived of her pay. Plaintiff had earned this annual leave to be applied for her benefit when and where necessary. No part of this leave was designed to enable her agency superiors to summarily separate her from the payroll with impunity. That she continued to accrue sick leave and annual leave during this period does not change the fact that she was unlawfully suspended and deprived of her pay.

The Comptroller General decided that Federal employees placed on enforced leave incident to their contemplated removal are entitled to a credit to annual leave because such action is a suspension. (37 Dec.Comp.Gen. 160.) He later advised that an employee might be removed pending actual separation only in such cases where his presence on the job constituted a threat to Government property, his co-workers, himself, or the public. Absent such unusual circumstances, enforced annual leave can be effected only in compliance with the Lloyd-La Follette Act; that is, an immediate relief from duty would be permitted only if the employee were continued in a full pay status during the period necessary to effect a suspension under the Act. (38 Dec. Comp.Gen. 206.)

We think that the plaintiff was suspended without pay during the period of involuntary annual leave, July 12, to August 3, 1956. Since the mandatory provisions of the Lloyd-La Follette Act were not complied with, the suspension was in violation of law and plaintiff is entitled to have that amount of annual leave credited to her and to recover accordingly.

The removal and the suspension are two separate and distinct matters. An error in one does no invalidate the other. Holtzman v. United States, Ct.Cl., 163 F.Supp. 863. The illegality of the suspension does not, therefore taint the otherwise procedurally correct removal.

As to Count One of plaintiff's petition, her motion for summary judgment is granted and the defendant's cross-motion for summary judgment is denied; as to Count Two, the plaintiff's motion for summary judgment is denied, the defendant's cross-motion for summary judgment is granted and that portion of plaintiff's petition will be dismissed. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

BARKSDALE, District Judge, sitting by designation, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.