Whitaker, Judge,
delivered the opinion of the court:
Plaintiff was discharged from his position as Manager of the Regional Office of the Veterans Administration at Albany, New York, on four charges, which are set out in full in finding 3(a). The Regional Office of the Civil Service Commission sustained charge III. The Board of Appeals and Review sustained all the charges except charge II.
Trial Commissioner Herbert N. Maletz has sustained charges III and IV. We agree with his conclusion that these justify plaintiff’s removal and, hence, we find it unnecessary to consider charge I, and we neither approve nor disapprove what the Commissioner says with reference to it.
In charge III, plaintiff was charged with the use of Government vehicles, and the time of Government employees to render personal service for him. Seven such incidents were specified and proven. This was a violation of 5 U.S.C. § 78 (c) (2) (1958), which of itself justifies removal in aggravated cases. This section reads, in part:
Any officer or employee of the Government who willfully uses or authorizes the use of any Government-owned passenger motor vehicle or aircraft, or of any passenger motor vehicle or aircraft leased by the Government, for other than official purposes or otherwise violates the provisions of this paragraph shall be suspended from duty by the head of the department concerned, without compensation, for not less than one month, and *408 shall be suspended for a longer period or summarily removed from office if circumstances warrant.
In Clark v. United States, 162 Ct. Cl. 477 (1963), we held that a removal of an employee because of the use of a Government vehicle, which the employee had left at his garage while he was away on official business, by his wife on a few occasions, was, under all the circumstances, an abuse of discretion.
In the instant case the violation was repeated over a long period of time, 'and, when it is taken in conjunction with the distortions of the truth in .the forms filed in connection with plaintiff’s application for employment, we think the Agency did not abuse its discretion in removing him.
We thoroughly agree with the Commissioner that the court will not inquire into the merits of the case unless it is convinced that the employee has been removed for some cause other than one to promote the efficiency of the service, or, to use the words of the Commissioner, unless his discharge was arbitrary or capricious. Because our opinion in Clark v. United States, sufra, seems to have misled some members of the Bar, we think it is in order to repeat, and to reaffirm as applicable to employees covered by the Veterans Preference Act, what we said in Gadsden v. United States, 111 Ct. Cl. 487, 489-490, 78 F. Supp. 126 (1948), with respect to employees covered by the Lloyd-LaFollette Act:
We have heretofore held in a number of cases that an employee of the United States Government cannot be discharged from his position and deprived of the emoluments thereof unless the procedure laid down by the Act of 1912 as a condition precedent to his discharge had been complied with. See e.g. Elchibegoff v. United States, 106 C. Cls. 641; 329 U.S. 629; Loren H. Wittner v. United States, No. 48043, decided March 1, 1948; Stanley H. Borah v. United States, No. 46772, decided March 1, 1948; but, on the contrary, the Supreme Court and this court have held that if the procedural requirements are complied with we have no jurisdiction to review the cause for the removal. Eberlein v. United States, 53 C. Cls. 466; 257 U.S. 82; Keim v. United States, 33 C. Cls. 174; 177 U.S. 290; Charles J. Culligan v. United States, 107 C. Cls. 222 ; 330 U.S. 848. The determination of whether or not a person’s discharge would promote the efficiency of the Government service *409 is vested in the administrative officer and no court has power to review his action if that action was taken in good faith.
On the other hand, if the administrative officer did not act in good faith, if he in fact did not discharge the employee for a cause that would promote the efficiency of the service, but if, on the other hand, he was motivated alone by malice toward the employee, there would seem to be but little doubt that the employee’s rights under the Act of 1912 have been violated. That Act says, “that no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service.” If, as a matter of fact, he was removed not for >a cause that promoted the efficiency of the service, but maliciously, merely because his superior did not like him, or merely because he wanted his job for some friend of his, then obviously the employee’s discharge was wrongful and illegal and, therefore, he is entitled to recover whatever loss he may have suffered thereby.
In innumerable cases it has been held that where discretion is conferred on an administrative officer to render a decision, this decision must be honestly rendered, and that if it is arbitrary or capricious, or rendered in bad faith, the courts have power to review it and set it aside. This court has this question presented to it constantly in cases arising under Government contracts, where the contracting officer and the head of the department are given the power to render final decisions on questions of fact. Both this Court and the Supreme Court have many times held that if the decision is arbitrary or capricious or so grossly erroneous as to imply bad faith, it will be set aside. See e.g. Burchell v. Marsh, 17 How. 344, 349; Kihlberg v. United States, 97 U.S. 398; United States v. Gleason, 175 U.S. 588, 602; Ripley v. United States, 223 U.S. 695, 701.
The court will not substitute its judgment for that of the administrative officer, but the employee nevertheless has the right to the honest judgment of the administrative officer. If that officer does not render an honest judgment but acts arbitrarily, capriciously or maliciously, then undoubtedly the rights of the employee have been violated.
The plaintiff in this case alleges that he was discharged “without cause, wrongfully, illegally and maliciously.” If he was discharged maliciously and without cause, then he has been deprived of the rights which the Act of 1912 gave him, and he is entitled to maintain tins suit under *410 section 145 of the Judicial Code (sec. 250, Title 28, U.S.C.) which gives this court power to render judgment upon a claim “founded upon * * * any law of Congress.”
Plaintiff complains that he was not accorded a personal interview with the head of the Department. We believe that the Commissioner correctly and sufficiently dealt with this contention. But the Commissioner’s report was published before our decision in the recent case of Paterson v. United States, 162 Ct. Cl. 675, 319 F. 2d 882 (1963), on which plaintiff placed much reliance at oral argument. In that case we held that the statutory requirement that the employee be allowed to answer charges personally was not satisfied by permitting him to explain his position to the investigators who had drawn up the charges against him and who were engaged in attempting to substantiate them. We said there that the employee should have been allowed to protest his discharge to one of his line supervisors. Nothing we said in that case indicates that an employee has any statutory right to appear personally before the head of the particular agency. We think that the requirement of a personal hearing was amply met in this case. The hearing committee, appointed by the Administrator, was not a prosecuting agency and, hence, the vice that we found in the procedure followed in Paterson is not present here.
That portion of the Commissioner’s opinion dealing with this issue and the portion relating to charges III and IV follow:
Plaintiff’s principal contention is that section 14 of the Veterans Preference Act (5 U.S.C. § 863) requires that a veteran, if he so requests, be given an opportunity to have a personal interview with the head of his agency and that a denial of such interview renders unlawful the discharge. Section 14, to the extent relevant, provides:
“No * * * preference eligible * * * shall be discharged * * * except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge * * * is sought shall have at least thirty days’ advance written notice * * * stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same *411 personally and in writing * * * and shall have the right to appeal to the Civil Service Commission * *
The statute does not guarantee the veteran a personal interview with the agency head or, indeed, with any particular official in the agency; it guarantees that the veteran will be afforded opportunity to answer the charges against him personally at the agency level before an agency officer or board having the authority to recommend or take final action. O’Brien v. United States, 284 F. 2d 692, 695 (Ct. Cl. 1960); Washington v. United States, 137 Ct. Cl. 344 (1957). See also Hart v. United States, 148 Ct. Cl. 10 (I960). In the present case the Administrator specially designated a hearing committee as his delegate to hear the charges and to recommend final action; and the committee gave the plaintiff the opportunity to appear personally, which he chose not to exercise. In such circumstances, the procedure that was followed was in full compliance with the statute.
«I»
* * * The finding of the Administrator sustaining Charge III alleging misuse of Government employees and vehicles on personal business is found not to be arbitrary or capricious. For the evidence before the administrative board was overwhelming and virtually uncontradicted that on 7 occasions, as set forth in the specifications, plaintiff caused the diversion of employees’ time and Government vehicles in order to perform personal services for him.
Likewise supported by the great weight of the evidence is the finding that plaintiff had made contradictory, misrepresentative and misleading statements which gave a false picture of his administrative background prior to his appointment to the YA. The evidence at the administrative hearing established the following: (1) in an April 1947 application for Federal employment and in a June 1950 Experience and Qualifications Sheet, plaintiff claimed his final salary in 1941 with his employer, the Goodrich Company, was $3,100 plus 50% of profits, while, in fact, he did not share in the company profits; (2) in these forms he stated that while employed, by the Goodrich Company, he supervised 4 sales managers, 30 salesmen and 600 dealers, the fact being that he never supervised that number of persons at any one time and the actual supervision performed by him was virtually nil; (3) he stated in these forms that when employed by the Hampshire and Belknap Petroleum Corp. from 1939 to 1941, he supervised 30 salesmen and managers for whom he claimed full re *412 sponsibility for recruiting, training and evaluating training results, when, in fact, he had supervision over approximately 4 salesmen and except for casual instruction of the salesmen he supervised, his responsibilities were not as indicated; (4) he stated in these forms that while employed by the Tidewater Oil Company from 1926 to 1936, he supervised 15 District Managers, 300 station managers, 45 salesmen, 1,000 dealers and representatives, when the fact was that he never supervised more than 30 employees; (5) in each of these forms, together with an August 1945 application, he listed his employment period with the Standard Eoad Marker Association as from 1924 to 1926, while he was actually employed by that firm for only 4 months in 1924; (6) as a result, plaintiff failed to account for his employment history for about 20 months during the two-year period 1924 — 1926 and gave the impression of continuity of employment; (7) on each of his application forms he showed no employment prior to 1924, whereas he had employment elsewhere, including a job with a company which discharged him in 1919.
Plaintiff does not deny that the evidence in the administrative record established the foregoing infractions. But he contends that in regard to Charge III, the instances were so rare and the time consumed so slight as to be de minimis; and in regard to charge IV, it is his position that at most there was a reasonable difference in interpretation as to the terminology rather than any wilful effort to deceive.
Considering the nature of the infractions, were this court faced with the decision, it might not have imposed so harsh a penalty as discharge. It may be that demotion or transfer to another position would have been a more appropriate action. But the function of the court is limited in cases of this kind to judicial review, that is, to determining whether the administrative action is arbitrary, capricious, or grossly erroneous; it is not the court’s function to substitute its own judgment for that of the agency head. On the basis of the record here, it does not appear that plaintiff’s superior “stepped beyond the limits of allowable discretion in removing him.” Hoppe v. United States, 136 Ct. Cl. 561, 565 (1956); Hart v. United States, 148 Ct. Cl. 10, 14 (1960).
Plaintiff is not entitled to recover, and his petition will be dismissed.
*413 FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Herbert N. Maletz, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a veteran of World War I and entitled to the benefits of the Veterans Preference Act of 1944, as amended. He was Manager of the Albany Regional Office of the Veterans Administration from May 28,1950 to March 4, 1955 (GS-14), when he was discharged by the Veterans Administrator.
2. (a) After World War I plaintiff had numerous jobs in private industry. He started his Government service on September 24, 1942, when he was employed by the War Manpower Commission as a training officer (CAF-12) where he remained until October 1, 1945, by which time his grade was GS-13. From October 1, 1945, through May 27, 1950, he served first as a consultant and then as Special Assistant for Planning in the office of the Assistant Admin-instrator of the Veterans Administration for Vocational Rehabilitation. His initial grade in that office was GS-13; his final grade, GS-14. On March 28, 1950, he was reassigned as Manager of the VA Albany Regional Office.
(b) While in the employ of the Government, plaintiff always received an “excellent” rating during the period when ratings were based on an “excellent”, “very good”, “good”, “fair” and “poor” adjective system. After the system was reduced to three adjective ratings, “outstanding”, “satisfactory” and “unsatisfactory”, he at all times received a “satisfactory” rating.
3. (a) By letter dated December 2, 1954, the Deputy Administrator of the Veterans Administration notified plaintiff of his proposed removal for cause. This letter read as follows:
1. In accordance with applicable VA regulations and Section 14 of the Veterans Preference Act of 1944, as amended, you are hereby notified that it is proposed to effect your removal for cause. Evidence now available as reflected in the following charges provides reasonable grounds for the belief that you do not possess those qualities of leadership, integrity, sound judgment and *414 dependability which this agency demands of an employee occupying the high level administrative position of station Manager. Your removal is proposed because of the following charges:
I. Although you occupied the position of Manager, GS-14, Albany Regional Office, since May 28,1950, you have failed to gain the respect and confidence of the majority of your staff members and immediate office personnel up to the time of October 1,1954. Principal reasons stated as the basis for this lack of respect and confidence are:
a. Your extensive absence from your office during working hours amounting to about 40% or more of your official duty time;
b. Your practice of reporting for duty considerably after the official duty hour;
c. Your expressed disinterest in your office;
d. Your unwillingness to make decisions; and
e. Your conduct and your attitude towards staff members.
II. Although you were not in your office for the full eight hours of work, you caused the Misses Mary A. Pendergast and Marie E. Gagnon to prepare and you did sign false reports as to your time and attendance at your office on duty during regular working hours for eight hours on the following dates in 1954: January 4, 5, 6, 7, 8, 12, 13, 14, 15, 18, 19, 20, 21, 22, 25, 26, 27, 28, 29; February 1,2, 3, 4, 5, 8,10,11,12,15, 24, 25; March 1, 2, 3,4, 5,11,12,15,16,18,19, 22,24,26, 29,30; and April 5, 6,7 and 9. Although you certified the truth and accuracy of the time and attendance reports, evidence indicates that you did not perform official duty during the entire eight official working hours as shown on the official YA time and attendance reports. As will be shown by the evidence, you also failed to show on these reports, your tardy arrival in the office on all but about 12 of the 51 days listed above.
III. You caused the official time and services of YA employees to be used on other than official business; you also caused the misuse of Government vehicles contrary to VA Manual 11-101, paragraph 83b (7) which cites Sec. 5 (c) (2) 60 Stat. 810; 5 TJ.S.C. 78 (c) (2), as follows:
a. On or about August 1951, you obtained the services of two YA employees, John F. Quinn and Thomas W. Gavin, and directed them to move material in the basement of your residence. They spent about two hours of official time, including travel time, on this proj ect. They *415 used official Government transportation to go to your home and return to the Eegional Office.
b. Yon had John Mulholland and John Quinn use a Government vehicle to pick up from a store in Menands, and deliver to your home in Delmar, on or about October
1952, a large household appliance believed to be a dishwasher. Including travel time, this errand consumed about three and one-half hours of official time for each employee.
c. You used the services of Mr. Mulholland for such personal errands as picking up skis, about January 22, 1954; when having a bicycle repainted, about February 1952; and for taking you to a nursery about December 1952; all of which personal errands were performed for you on official time and by use of Government vehicles..
d. You used the services of Mr. Joseph P. Halpin, while operating a Government vehicle, about March 4, 1954, to transport a bicycle repainted at the Nelson Bicycle Company.
e. You used the services of Mr. John J. Winters, Jr., while operating a Government vehicle, to pick up a croquet set for you from Montgomery Ward, about June 1953.
f. You used the services of Mr. Edward J. Dwyer, as driver of a Government vehicle to transport you from a garage on Delaware Avenue, Albany, New York, to your home in Delmar, to the Albright Hardware Store, Central Avenue, Albany, to your home in Delmar and return to the Eegional Office. This occurred approximately in March 1953 and is estimated to have consumed about 2% hours of official time for each of you.
IY. You signed and certified as to the truth of statements which have been found to be contradictory, mis-representative, and misleading in SF-57’s, Application for Federal Employment, dated August 27, 1945 and April 3,1947, and in SF-58, Experience and Qualifications Sheet, dated June 14,1950, and in the attachments to these forms, as follows (the three forms are identified hereinafter by symbols X — for August 27, 1945, Y— for April 3,1947, and Z — for June 14,1950):
a. During employment with the Connecticut General Life Insurance Company, January-September 1942, you showed:
(1) On X-Y-Z — Eeason for leaving — “To serve more directly in the war effort.”
. Evidence indicates that your services were discontinued with this company after it was suggested to you that you might be more successful in some other line of *416 endeavor. You had earned about $554.20 in commissions from this company but had overdrawn your drawing account to the extent of $1,794. You still owed this company $1,332.04 as of August 16,1954.
b. During employment with Walter H. Goodrich and Company, Inc., from, January to December 1941 you showed:
(1) Exact title of your position—
On X — Sales Coordinator and Eeal Estate Manager.
On Y and Z — Coordinator—Eeal Estate and sales.
Evidence indicates that your job did not have this title but that you were in fact employed principally as a salesman.
(2) Salary—
On X — $3,100 starting and final.
On Y and Z — $3,100 starting, $3,100 final plus 50% of profits.
Evidence, including your testimony under oath to a VA investigator, indicates that you did not share in the company profits as claimed.
(3) Number and class or kind of employees supervised—
On X — You listed no supervision but referred on the addendum sheet to the company having 4 sales managers and approximately 30 salesmen.
On Y and Z — 4 Sales Managers, 30 Salesmen, and 600 Dealers.
Evidence indicates that you never supervised that number of persons at any one time and the actual supervision performed by you was virtually none.
(4) Duties and responsibilities—
On addendum to X — “I served in a dual capacity— (1) in the development of real estate assets, (2) as Sales Coordinator for the four affiliated companies.”
On “Exhibit D” to Y — You stated among other things that you were responsible for the training of personnel, including district managers, retail managers, wholesale and retail salesmen; that this included responsibility for analyzing matters of training, planning and developing organized programs of training, and evaluating the results of training. Also, that you were responsible for development of outlets, both existing and proposed; responsible for the supervision of contractors in the construction and design of new outlets; responsible for planning improvements and expansion of existing outlets; and responsible for studies of economic and marketing conditions in all areas covered by the Corporation.
*417 On Z — You claimed among other things responsibility for operations and training of personnel including District Managers, Eetail Managers, Wholesale and Eetail Salesmen. Further, that you analyzed, planned and developed training programs and evaluated results; developed proposed and existing outlets; supervised contractors in construction and design of new outlets; planned and improved expansion of existing outlets; and were responsible for studies of economic and marketing conditions in all areas covered by the Corporation.
Evidence indicates that your principal duties were that of a salesman with the possible added duty of obtaining one or more real estate sites. Your [sic] were not responsible for analysis, planning, and development of training programs, nor for evaluating results. You also did not perform such functions. You were not responsible for and did not develop outlets nor supervise contractors, nor plan expansion of existing outlets. You were not responsible for and did not make studies of economic and marketing conditions as alleged.
c. During employment with the Hampshire and Belknap Petroleum Corporation from September 1939 to January 1941, you showed:
(1) Eeason for leaving—
On X — Sold business.
On Y and Z — Sold or leased assets.
Evidence indicates that in regard to the Hampshire Company this statement is only a half-truth in that you were required to dispose of your interest in view of the distributors’ wish not to serve the firm unless you ended your connection with it. The evidence on your termination of your interests with the company is such as to raise the additional question of false statement under oath when you denied in your testimony before the VA investigator, that you had terminated your services with the Hampshire Company under such a circumstance.
(2) Number and class or kind of employees supervised—
On X — None claimed.
On Y — 30 salesmen and managers, and on the “Exhibit E” of Y — You claimed, among other things, full administrative responsibility for training, evaluation of training results, and that you were responsible for all planning and control of operative and personnel matters.
On Z — 30 salesmen and managers for whom you claimed among other things full responsibility for recruiting, training, and evaluating training results.
Evidence and your own testimony indicate that you had supervision over approximately four salesmen. *418 Except for casual instruction of the salesmen you supervised, your responsibilities are not as stated by you on YandZ.
d. Your employment with the Belknap Petroleum Company is (on Y and Z) claimed during the same period as in c (above) and you claim the same supervision and responsibility, although you actually supervised no more than four persons at any one time.
e. During employment with the firm of Coburn and Middlebrook from July 1936 to September 1939 you showed:
(1)Season for leaving—
X-Y-Z — “To market petroleum products.”
Evidence indicates that you were discharged from your position.
f. During employment with the Tidewater Oil Company from April 1926 to July 1936 you showed:
(1) Salary—
X — $2,700 to $7,000 including bonus, prizes, etc.
Y and Z — $2,700 to $7,200 per annum including bonus (prizes on Y only), etc.
Evidence indicates that your actual salary was about $3,600 per year plus a bonus which did not exceed $1,500 in any one year of employment.
(2) Number and class or kind of employees supervised—
On addendum sheet to X — 1931-1932 training six district managers and their staffs and service station personnel.
1936 — “My organization (including some 350 outlets) ”
Y — 15 District Managers, 300 Station Managers, 45 Salesmen, 1,000 Dealers and Bepresentatives
Z — 51 District Managers, 300 Station Managers, 45 Salesmen, 1,000 Dealers and Bepresentatives.
Evidence indicates that you did not supervise the number of individuals shown on Y and Z at any one time. When employed in Hartford, Connecticut, you supervised about 30 employees, including 7 salesmen; in Boston you supervised about 13 supervisors and salesmen ; and in New London and Providence you supervised about 6 persons.
(3) Duties and responsibilities—
On X — “All functions of management — Plant management and maintenance.”
On Supplement to X — You claimed, among other things, the training of field representatives.
On “Exhibit F” of Y — Among other tilings, you claimed initiating, implementing, directing and eval *419 uating training programs for all classes of personnel (managers, distributors, wholesale and retail salesmen, accountants, clerical, etc.). You claimed responsibility for developing plans for improvement of personnel through evaluation of individual abilities of all grades of personnel after consultation and tests relative to their abilities.
On Z — Among other things, you claimed initiating, directing, and evaluating training programs for all categories of personnel; devising methods and procedures to obtain most effective operations; and being responsible for developing plans for improvement of personnel through evaluation of individual ability.
Evidence indicates that you did not initiate, implement, direct and evaluate training programs for all classes of personnel. You also did not have responsibility for developing plans for improvement of personnel as stated by you. You also did not develop plans and procedures for effective operations, which you imply to be company operations.
g. During employment with the Standard Eoad Marker Association listed as from 1924 to 1926 you showed:
(1) Employment period—
On X-Y-Z — 1924-1926.
Evidence shows you were employed by this firm for only 4 months — from April through July of 1924.
(2) Exact title of your position—
On X — Selling of advertising — contract for erection and maintenance.
On Y and Z — Connecticut Distributor.
Evidence indicates that you were a salesman for advertising space on billboards.
(3) Duties and responsibilities — ■
On X — Selling, installing and serving outdoor advertising in the State of Connecticut.
On Y — Among other things you claimed responsibility for recruitment and training of personnel, both for sales and operations; and for all planning as to merchandising and operating matters.
On Z — Among other things you claimed to be responsible for recruitment and training of sales and operating personnel and planning as to merchandising and operating matters.
Evidence indicates that you were primarily a salesman of advertising space on billboards and you did not have responsibility as you showed in Y and Z.
h. As a result of your misrepresentations listed in *420 g(l) above you failed to account for your employment history for about 20 months of the two year period 1924Y1926 and gave the impression of continuity of employment on X-Y-Z.
1. You show no employment prior to 1924 on any of the forms X-Y-Z.
Evidence indicates that you had employment elsewhere. You worked with the Connecticut Company, Hartford, Connecticut and were discharged by them on July 8, 1919, because of register shortages as reported by inspectors.
j. Because of “i” and your separation in 1939 from the firm of Coburn & Middlebrook under unfavorable conditions, you are charged with falsely answering “no” to Question 18 on X and Question 29 on Y, concerning discharge or forced resignation from prior positions.
k. Your formal educational qualifications are stated as follows:
On X and Y — Completed 12th grade. Graduated from high school.
On Z — You failed to show your education.
Evidence indicates that you did not graduate from high school, leaving school after approximately three and one-half years of schooling. It was not until 1944 that you secured a “Qualified Academic Certificate” to reflect your educational abilities.
In connection with the entire Charge IV, a through k, on X, you signed after a statement of oath as to the full and true statements made by you. On Y and Z, you certified as to the truth, completeness, and correctness of your statements, which certifications followed notice that false statement was punishable by Law (U.S. Code, Title 18, Section 80). The extent and scope of these misrepresentations are such as to give a false picture of the quality of your administrative experience prior to your appointment to the Veterans Administration. Thus, your appointments were based on false premises.
2. You will be given until the close of business on December 13,1954, to reply to this notice personally and in writing, if you desire; and to submit such affidavits in support thereof as you wish.
3. Provided you make written request within the same time limit specified above, you will be given a hearing before a hearing committee to be specially designated. At a hearing, you may have a representative of your own choice and will receive opportunity to present evidence and witnesses in connection with the charges presented herein.
*421 4. Prior to final decision, full and impartial consideration will be given to your reply, if reply is made, and to the facts developed at a hearing, if a hearing is held. You will be notified in writing of the decision.
5. If one or more of these charges are validated to a degree requiring your removal, your removal will be effective not less than thirty (30) days from the day
following the date of receipt of this notice.
6. You will remain on annual leave during this notice period and until further notification.
(b) Plaintiff replied by letter dated December 10, 1954, in which he denied that there were any grounds for dismissal and requested a hearing on the charges.
4. After being notified of his proposed removal, plaintiff made several unsuccessful efforts to have a personal interview with the Administrator of Veterans Affairs. In addition, he had his brother-in-law write on December 10, 1954, to the Administrator requesting that he grant plaintiff a personal interview. The Administrator replied to this letter on January 17, 1955, stating that an administrative hearing has been granted; that when the hearing board had completed its work and made its recommendations, he (the Administrator) would consider the recommendations in light of all the evidence presented in determining whether the charges, or any of them, are sustained, and what disciplinary action, if any, is required; and that under the circumstances “nothing but delay could be gamed by a personal interview. * * *”
5. (a) Beginning on January 24, 1955, a 3-member VA hearing committee held an 8-day hearing on the charges. At the hearing plaintiff was represented by counsel and was afforded opportunity to testify.
(b) Plaintiff did not testify before the VA committee. His attorney offered and the hearing committee received in evidence a 215-page verbatim transcript of plaintiff’s answers under oath to questions propounded by a VA investigator in an interrogation that had extended over a period of 4 full days.
(c) Plaintiff’s attorney sought to have 13 VA Albany Regional Office employees testify before the VA committee for the purpose of rebutting evidence presented by various divi *422 sion chiefs in the Regional Office in support of Charge I, which alleged, in part, that plaintiff had “failed to gain the respect and confidence of (his) staff members. * * *” Among the VA Regional Office employees plaintiff’s attorney thus sought to have testify were the installation’s chief psychiatrist, the chief of the Education Section, the Chief of the Facilities Section, two section chiefs in the Loan Guaranty Division, the Chief of the Appraisal Section, a liaison officer, a contact representative and two lawyers. The VA hearing committee refused to grant plaintiff’s attorney the right to present any of these witnesses on the ground that the term “staff members” in Charge I included only division chiefs of the office. Since none of plaintiff’s proposed witnesses was a division chief, the VA committee held that they were not “staff members” and hence precluded them from testifying for plaintiff.
(d) A VA organization manual issued September 7,1953, provided in part:
In the field station it is the Manager who is the only official “in the line” in relationship to the Central Office. The Division Chief (or equivalent) in relationship to the Manager is a staff official.
6. On February 18, 1955, the VA hearing committee sustained all charges with the exception of portions of Charge IV and recommended that plaintiff be removed for cause.
7. By letter dated March 3, 1955, the Administrator of Veterans Affairs notified plaintiff that in the interest of the efficiency of the Government service, he was to be discharged on March 4,1955. This letter read as follows :
Reference is made to the letter of December 2, 1954, in which you were given advance notice of proposed removal for the reasons shown in charges numbered I through IV.
I have considered all evidence obtained during your administrative hearing January 24-February 1,1955, as well as the statement of facts and recommendations of the administrative hearing committee, before reaching decision. During evaluation of evidence, it was observed that you submitted a copy of your statement before a Veterans Administration investigator in lieu of direct testimony and cross-examination as requested by the hearing committee.
*423 Determinations on the charges I through IV, upon which decision is based, are as follows:
Charge I — This charge is sustained. You failed to gain the respect and confidence of the majority of your staff members and immediate office personnel for the principal reasons stated in the charge specifications la through Ie.
Charge II — This charge is sustained in that you caused Miss Pendergast to prepare and you did sign false reports as to time and attendance as specified. Although you were tardy in your arrival at your office on 39 of the 51 specifically shown days, you failed to so indicate on your time and attendance reports.
Charge III — This charge is sustained as to your misuse of time and services of Veterans Administration employees, and as to your misuse of Government vehicles. You, as a Veterans Administration Manager, had knowledge of this agency’s intent, as indicated by the posting of decals on all vehicles, that Government vehicles should not be used for personal business. Good administrative judgement [sic] would have indicated to you that you should have set an example of utmost propriety in use of vehicles.
It is observed that the date of the specification Illf was fixed during the hearing as approximately March 1952. All of the incidents stated in specifications Ilia through Illf are admitted by you and were positively supported by direct testimony of witnesses.
_ Charge IV — The substance of this charge: that you signed and certified as to the truth of statements on applications and attachments thereto which were contradictory, misrepresentative, and misleading; that you made certain false statements; and that all of the statements were made despite notice on the application forms that false statement was punishable by law, is sustained. Comment on the individual specifications is made as follows:
IVa — This specification is sustained only as to your overdrawn account and your indebtedness to the Connecticut General Life Insurance Co.
IVb(l) — This specification is not sustained.
IVblzS — Sustained as stated.
IVb(3) — This specification is sustained as stated, on the basis of your own testimony.
_ IVb (I) — Your own testimony sustains this specification indicating that you did not have the duties and responsibilities as claimed by you on your application forms and attachments.
*424 IVc(l) — No positive determination is made on the basis of evidence submitted as to your reason for leaving the Hampshire Company.
IVc (2) — This specification is sustained in that you supervised less than the number of persons claimed, by you and your statements are contradictory, misleading, and misrepresentative both as to the number of persons supervised and your responsibilities towards them.
IV d — This specification is sustained without determination as to the exact number of persons supervised during your employment at the Belknap and Hampshire Companies. Your employment was not simultaneous with both companies as shown on your application fonns, nor was the extent of your supervision and responsibilities identical, although your application forms and attachments so indicate.
IV e — -Your reason for leaving Coburn and Middle-brook is found to have been improperly stated. Your own testimony indicated forced “resignation”, and it is reasonable to conclude that you were discharged in the relative sense that the term is used on Federal Government application forms.
IVf (1) — While the hearing committee made no positive finding as to the exact amount of your annual bonus with the Tidewater Company, the bonus limitation as stated in the specification was not denied by you. Reasonable grounds exist for sustainting the entire charge as stated, as indicative of additional misleading and misrepresentative statements by you.
IVf(2) — This specification is sustained in substance with the reasonable assumption that the number of employees supervised was approximately as stated in the charge. The contradictory nature of your various statements is evident on the face of your application forms and attachments.
IVf (3) — Although the hearing committee was unable to positively establish your exact duties with the Tidewater Company, in view of your failure and refusal to offer direct testimony and to be cross-examined, reasonable grounds exist for sustaining the entire specification as reflecting further misrepresentations and misleading statements by you.
IVg (1), (2), (3) — Sustained in substance as alleged. Your duties were those of a salesman who had responsibility for installation of road signs.
IV Ti, i, j, h — Sustained as stated.
The extent and scope of your misrepresentations gave a false picture of the quality of your administrative ex *425 perience prior to your Veterans Administration appointment.
I consider that the statement of facts by the hearing committee would in itself be sufficient to determine that your removal is required. Additionally, it may be observed that my own findings have been more extensive than those of the hearing committee, in respect to charges III and IV.
On the basis of the four sustained charges I through IV, and in the interest of the efficiency of the Government Service, my decision is to affect your removal from the Veterans Administration March 4, 1955.
You have the right to appeal this adverse decision no later than ten days subsequent to the effective date of action shown above, to the Director, 2nd U.S. Civil Service Region, Federal Building, Christopher Street, New York 14, New York.
Copies of transcript of hearing and of the statement of facts by your hearing committee will be sent to you under separate cover.
8. On March 11, 1955, plaintiff appealed to the Director of the Second U.S. Civil Service Region, New York, New York, under section 14 of the Veterans Preference Act, for a review of all the proceedings heretofore had in the matter. He did not request a hearing.
9. On September 23,1955, the Director of the Second U.S. Civil Service Region after a de novo review of the proceedings reached the following conclusions:
(a) He found that Charge I was too general in nature and failed to show specific facts upon which the charge was based as to permit plaintiff a fair opportunity to reply in his own defense. He also noted that “many specific items were introduced during the agency hearing to support the conclusion that specific incidents were considered about which (plaintiff) was not informed in writing and given the opportunity to reply.” For these reasons, Charge I was found to be procedurally defective.
(b) Charge II was found not to be sustained since the evidence in support thereof did not establish that plaintiff failed to perform official duties while not in the office on the dates specified.
*426 (c) Except for one incident cited in specification (c), Charge III was found by the Eegional Director to be sustained by the evidence.
(d) With respect to Charge IY, the Regional Director found specifications IV (b) (2), IV(b) (3), IV (c) (2), IV (d), IV(f)(2), IV(g)l, IV(h) and IV(i) sustained by the evidence.
He found that specifications IV(a), IV(b) (1), IV(b) (4), IV(c) (1), IV(e), IV(f) (1), IV(f) (3), IV(g) (2), IV(g) (3), IV(j) and IV(k) were not sustained by the evidence.
(e) The Regional Director found that the over-all Charge IV was not sustained. He stated:
In considering the merits of the over-all charge that the appellant gave a false picture of the quality of his administrative experience prior to his Veterans Administration appointment, based upon the extent and scope of his misrepresentations, the conclusions reached by this office sustain those portions of the over-all charge relative to appellant’s salary at Goodrich in 1941; number of persons supervised by him at Goodrich in 1941, Hamshire [sic] and Belknap from 1939 to 1941, and Tide Water from 1926 to 1936; dates of employment at Standard Road Marker in 1924; failure to account for 20 months’ employment from 1924 to 1926; and failure to list employments prior to 1924. Since the agency has omitted the portion of the over-all charge that the appointments were based on false premises and since it has not been shown that the sustained portions of the charge can be considered as material misrepresentations which would have influenced the appointing officer in the appellant’s selection, it is not considered that the evidence is sufficient to warrant the conclusion that the extent and scope of the misrepresentations gave a false picture of the quality of appellant’s administrative experience. Therefore, it is considered that the over-all charge is not sustained.
(f) The Regional Director found that plaintiff’s removal on the sustained charge (Charge III) was not arbitrary and was considered to be for such cause as would promote the efficiency of the service. In this connection he stated:
In considering the merits of the removal penalty, based on the sustained charge relative to the improper use of agency employees and government vehicles for *427 personal services, other than official government business, it is the opinion of this office that this charge, in and of itself, is sufficiently serious to warrant removal action. This opinion is based upon consideration of the appellant’s position as the top agency official in the Begional Office, with its attendant responsibility to enforce the regulations and to insure that the services of the employees under his supervision and the government vehicles under his control were properly used during official working hours on matters relating to official business. The appellant’s breach of these regulations in causing the diversion of employees’ time and government vehicles in order to perform personal services for him on the seven occasions which were sustained by the evidence is considered to be sufficient to show that the appellant failed to properly carry out that part of his responsibility as Begional Manager, and under the circumstances, the appellant’s separation on this charge was a proper corrective action.
10. On September 30,1955, plaintiff appealed the decision of the Second Begion to the Board of Appeals and Beview of the Civil Service Commission. By letter dated April 26, 1956, the Board of Appeals and Beview sustained plaintiff’s removal action. The letter read as follows:
This will refer to your appeal from the decision of the Second Civil Service Begion under Section 14 of the Veterans’ Preference Act sustaining the personnel action of the Veterans Administration removing you from the position of Manager, GrS-14, $10,600 per annum, Veterans Administration Begional Office, Albany, New York, effective March 4, 1955, on charges of (1) failure to gain the respect and confidence of your staff, (2) preparing and signing false time and attendance reports, (3) misuse of Government employees and vehicles on personal business, and (4) making misleading and misrepresentative statements on application forms.
Careful consideration has been given to the entire record in your case including the information developed during the processing of the appeal in the Begional Office and the information submitted subsequent to the Begional Office decision. As a result of this review, it has been concluded that the evidence establishes that your removal was effected for such cause as will promote the efficiency of the service as required by Section 14 of the Veterans’ Preference Act.
*428 The Commission’s Regional Office.found that Charge No. I (Failure to gain respect and confidence of your staff) is too general in nature and failed to show the specific facts upon which the charge is based. The Board of Appeals and Review has found Charge No. I to be procedurally valid. The gravamen of Charge I is the allegation that you failed to gain the respect and confidence of the majority of your staff. This allegation is clear, specific and detailed and has been found to comply with the procedural requirements of the law. It was not necessary to include in this charge the exact dates of your alleged tardiness, examples of your conduct and attitude toward employees, or details concerning any of the five listed reasons why your staff lacked respect and confidence. The only allegation in the charge that you were called upon to answer is that concerning the lack of respect and confidence of your staff. That allegation was included in the charge in a specific and detailed manner.
In regard to the merits of Charge No. I, the evidence establishes that eleven staff members and office personnel gave testimony establishing their lack of respect and confidence. No testimony or evidence was submitted that would refute the Charge preferred or the evidence submitted in support thereof. Accordingly, Charge No. I has been found to be sustained.
Charge II (Preparing and signing false time and attendance reports) has been found by the Board of Appeals and Review to be procedurally defective by reason of the absence of specific dates and hours when you were allegedly tardy and improperly absent. In regard to the alleged tardiness, the Charge merely states that this occurred on “about 12 of the 51 days” listed. ■ The requirement for specificity cannot be met by such a vague and indefinite reference without citation of dates and hours. Likewise, in regard to the allegation of improper absence, the agency’s failure to include the specific hours of absence on the cited dates renders that part of the Charge procedurally defective.
Charge III (Misuse of Government employees and vehicles on personal business) has been discussed in detail in the Findings and Recommendation of the Second Civil Service Regional Office, a copy of which was furnished to you. The Regional Office findings in regard to Charge III are affirmed. The weight of the evidence refutes the defensive contention that the personal service actions mentioned in the Charge were undertaken by subordinate employees without your knowl *429 edge or consent. In examining Charge III particular attention was given to the submission that there was no violation of 5 U.S. Code 78 (c) (2) as the vehicles were not “passenger motor vehicles.” It is evident, however, that regardless of the reference to 5 U.S. Code 78(c) (2) in the introductory paragraph of the Charge, there are sufficient separate adverse allegations of vehicle misuse in the individual specifications included in the Charge to support the Regional Office decision without reference to the United States Code.
In examining the Regional Office decision in regard to Charge IV (Making misleading and misrepresentative statements on application forms) it has been noted that Specifications (b)(2), (b)(3), (c)(2), (d), (f)(2), (g) (1), (h) and (i) were found to be sustained. This finding has been affirmed and, in addition, the Board of Appeals and Review has found Specification (g) (3) to be sustained by the evidence. Examination of the facts in regard to the sustained Specifications establishes that they concern misrepresentations relative to your past administrative experience. These are material misrepresentations as the evidence establishes that but for them, your employment with the Veterans Administration would not have been consummated. By reason of these findings, Charge IV is held to be sustained with respect to the individual Specifications enumerated above.
In view of the foregoing, the decision of the Civil Service Region is rescinded with respect to any part in conflict with the findings set forth hereinbefore and, as amended, the Regional Office decision sustaining the removal action in your case, is affirmed.
11. On November 15, 1956, plaintiff requested the Civil Service Commission, in accordance with its discretionary powers, to review the case and set aside the findings of the Board of Appeals and Review. On May 21,1957, the Civil Service Commission advised plaintiff that his request had been denied and that “the previous decision of the Board of Appeals and Review remains the final decision in the case and the administrative remedies of all parties to the appeal are exhausted.”
12. Plaintiff filed suit in this court on July 16, 1957, and trial sessions were held on July 2 and 3 and September 24, 1962.
13. Plaintiff exercised reasonable diligence in asserting his rights to the compensation incident to his office. Defendant *430 failed to present any evidence that the Government was prejudiced by any alleged delay by plaintiff in asserting his rights.
ultimate findings
14. Charge I. The merits of this charge are not considered.
15. Charge II. No evidence was presented at the administrative hearing that plaintiff failed to perform official duties while not in the office on the dates specified in the charge. In the absence of such evidence, the finding of the Administrator of Veterans Affairs that plaintiff had prepared and signed false time and attendance reports on such specified dates was arbitrary and capricious.
16. Charge III. (a) The finding of the Administrator of Veterans Affairs sustaining Charges III (a) through 111(f) was supported by substantial evidence. In such circumstances the finding of the Administrator that plaintiff caused the official time and services of VA employees to be used on other than official business and that he caused the misuse of Government vehicles was not arbitrary or capricious.
(b) 5 U.S.C. § 78(c) (2) governed the operation of Government-owned vehicles for all times here pertinent. That provision reads in part:
Any officer or employee of the Government who willfully uses or authorizes the use of any Government-owned passenger motor vehicle or aircraft, or of any passenger motor vehicle or aircraft leased by the Government, for other than official purposes or otherwise violates the provisions of this paragraph shall be suspended from duty by the head of the department concerned, without compensation, for not less than one month, and shall be suspended for a longer period or summarily removed from office if circumstances warrant.
17. Charge IV. (a) The finding of the Administrator of Veterans Affairs that plaintiff signed and certified as to the truth of statements on applications and attachments thereto which were contradictory, misrepresentative and misleading, the extent and scope of which gave a false picture of the quality of his administrative experience prior to his VA appointment, was not arbitrary or capricious.
*431 (b) More particularly, there was substantial evidence before the YA hearing committee that plaintiff in applications for Federal employment:
(1) Misrepresented his final salary as an employee in 1941 of Walter H. Goodrich & Co. (Specification IV(b) (2));
(2) Misrepresented the nature of his supervisory responsibilities and number of persons supervised while employed by the Goodrich company (Specification IY(b) (3));
(3) Misrepresented the number of persons he supervised as an employee of Hampshire and Belknap Petroleum Corp. from 1939 to 1941 (Specification IY(c) (2));
(4) Misrepresented the number of persons he supervised as an officer of the Belknap Petroleum Company during the same period (Specification IY(d));
(5) Misrepresented the number and kind of employees he supervised as an employee of the Tidewater Oil Company from 1926-1936 (Specification IY(f) (2)) ;
(6) Misrepresented his employment period with the Standard Boad Marker Association in that he was actually employed by that firm for 4 months in 1924 but listed employment from 1924 to 1926 (Specification IV(g) (1)) ;
(7) As a result of the foregoing misrepresentation, he failed to account for his employment history for about 20 months during the period 1924 to 1926 and gave the impression of continuity of employment (Specification IV(h)); and
(8) Showed no employment history prior to 1924 when actually he had employment elsewhere, including a job with a company from which he was discharged in 1919 (Specification IV (i)).
(c) The findings of the Administrator of Veterans Affairs sustaining Charges IY(a) in part, IY(b) (1), IV(b) (4), IY(c) (1), IY(e), IV(f) (1), IV(f) (3), IY(g)(2), IV(g) (3), IY(j) and IY(k) were not supported by the evidence and were arbitrary and capricious.
18. The decision of the Administrator of Veterans Affairs to effect plaintiff’s removal from the Veterans Administration in the interest of the efficiency of the Government service was not arbitrary, capricious or grossly erroneous.
*432 CONCLUSION OE LAW
On the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is dismissed.