Davis, Judge,
delivered the opinion of the court:
Plaintiff, a non-veteran, was discharged in November 1957 from his position as an attorney in the Office of the Solicitor of the Department of the Interior. Almost a year earlier, *35 in December. 1956, tbe Solicitor notified bim in writing of his proposed removal on the ground of inefficiency and incompetency ; the notice set forth in detail ten specific instances alleged to support the general charge. Plaintiff filed, in February 1957, an elaborate answering memorandum. In May 1957 the Administrative Assistant Secretary of the Department wrote that he had considered the charges and answer and had sustained the charges. Plaintiff then requested a hearing on the charges (under the Department of the Interior’s procedure) and simultaneously filed, under Executive Order 10590,[1] a complaint alleging religious discrimination as the moving force behind the action sought to be taken against him.
To hear the charges of incompetency and inefficiency (but not the defense of religious discrimination), the Administrative Assistant Secretary appointed a three-man committee of senior officials of the Department; one was a lawyer who had not practiced for a number of years and the other two were non-lawyers. This committee held a hearing, at which plaintiff was represented by counsel, as a result of which it concluded that the decision to separate plaintiff from his position should be sustained. On July 3, 1957, the Secretary of the Interior wrote plaintiff that it was the Secretary’s decision that plaintiff should be removed as of July 81, 1957.
Plaintiff’s assertion of religious discrimination was processed separately, after the Secretary’s determination of July 3rd had been made. Under the applicable procedure, plaintiff asked for. a hearing on his complaint of discrimination. On July 25th, the Administrative Assistant Secretary granted this request and appointed another committee of three other Interior officials to hear this contention. The Acting Secretary notified plaintiff that the Department would defer final action on his pending discharge until the hearing on the discrimination phase had been had and the second committee had made its recommendations.
After a hearing on August 1st (at which plaintiff was *36 represented by counsel), the new committee concluded that there was no factual support for plaintiff’s allegation that his removal on charges of incompetency was motivated by religious discrimination. The Department thereupon formally denied his complaint. Plaintiff appealed to the President’s Committee on Government Employment Policy for a review of this decision; the files and the transcript of the hearing were then forwarded to that Committee. On October 11, 1957, the Committee informed the Interior Department that in its judgment the assertion of religious discrimination was not substantiated. Plaintiff was so informed shortly thereafter. The decision to remove him became final, and he was separated from his position effective November 30,1957.
In due course plaintiff perfected an appeal to the Civil Service Commission from the order of dismissal. The Commission considered all matters over which it believed it had jurisdiction, and affirmed the removal. The plaintiff’s charge that the Interior Department had failed to follow its own regulations was referred, without Commission action, to the Department (which concluded, on reconsideration, that it had adhered to its procedures and regulations in effecting the separation). This suit for back pay was instituted in 1959.
The parties have stipulated that, at this stage, the case involves only the four legal issues set forth in finding 1. Plaintiff challenges neither the sufficiency of the evidence that he was professionally incompetent nor the sufficiency of the proof that there was no discrimination against him. Eather, he contends, and defendant denies, that the discharge was vitiated because of failure to comply with the procedural requirements reflected in the joint statement of the issues. We hold that there was no violation of the applicable requirements so as to void plaintiff’s removal.
1. The first contention is that, since plantiff was an employee of the Solicitor’s Office, the charges of inefficiency and incompetence (preferred by the Solicitor) should have been evaluated, under the Interior Department’s own regulations, by the Solicitor and not by or through the Administrative Assistant Secretary. It does appear that, once the *37 charges had been levied, the Solicitor no longer had anything to do with the case. In marking this as a fatal defect, plaintiff stresses (i) a delegation by the Secretary to the Solicitor of authority respecting “the legal work, the attorney positions, and the attorney personnel” of the Department, and (ii) a Departmental regulation that “the official to whom authority has been delegated to make appointments is delegated the power to make removals to the extent of appointment authority.” Whatever merit plaintiff’s argument might have if the Secretary had not acted himself on plaintiff’s case,[2] we see no basis in the Departmental regulations for the position that the Secretary had deprived himself of the power to act personally on proposed separations. In none of the personnel delegations (set out in findings 2-5) did the Secretary divest himself of that authority; the purpose of the delegations was to grant concurrent power, in designated fields, to various officials. The Secretary still retained all his powers as the head of the Department. See 5 U.S.C. §§ 481, 485; Reorg. Plan No. 3 of 1950, 64 Stat. 1262. Cf. Congress Constr. Corp. v. United States, 161 Ct. Cl 50, 314 F. 2d 527, cert. denied, 375 U.S. 817 (1963). In plaintiff’s case, the Secretary utilized this residual power over personnel matters; he himself sustained the charges of incompetence and inefficiency and determined that removal was warranted. In taking this action, the head of the Department was not required by any statute or regulation to consult with, or seek advice from, any particular official of the Department. Although plaintiff was a lawyer in the Solicitor’s Office, the Secretary could lawfully limit his consultations, as he apparently did here, to officials connected with the Administrative Assistant Secretary. Nothing compelled other or wider discussions. Accordingly, the Secretary’s action in separating plaintiff was not rendered invalid by the failure to confer with the Solicitor.[3]
*38 2. Plaintiff’s second, and most troublesome, contention is that the discrimination proceedings, which became an integral part of the removal process, were invalid because they violated the Executive Order establishing the federal anti-discrimination program. The Order stated that “The position of Employment Policy Officer shall be established outside of the division handling the personnel matters of the department or agency concerned.” The Employment Policy Officer for the Interior Department was the Administrative Assistant Secretary; it was he who supervised the processing of plaintiff’s charge of religious discrimination and he appointed the committee which heard that charge. Plaintiff’s point is that in the Interior Department the Administrative Assistant Secretary handles the personnel matters and is therefore disqualified, under the Executive Order, from acting as Employment Policy Officer.
This is far from a frivolous argument, but we are constrained to reject it because the agency most concerned with implementing the Executive Order — the President’s Committee on Government Employment Policy — accepted the Administrative Assistant Secretary (and his colleagues in other departments) as a proper Employment Policy Officer under the Order.
The pertinent history is detailed in findings 26-31. It shows, first, that the President’s Committee officially and specifically approved the designation of the Administrative Assistant Secretary as Interior’s Employment Policy Officer. This was done by the Acting Executive Director of the President’s Committee, without the actual participation of the Committee’s members, as part of the review of departmental and agency regulations submitted to the Committee; this procedure was approved by the Committee and the Acting-Executive Director was functioning within her delegated authority. The Committee members later approved, informally the Assistant Administrative Secretary’s designation as the Employment Policy Officer. More significantly, the record proves that, in its interpretation of the Executive Order, the President’s Committee generally considered the choice of the Administrative Assistant Secretary of a department or agency as its Employment Policy Officer to be within the *39 purview of tibe Order, and indeed deemed such a designation as very desirable because of the high level of the appointee. At least three cabinet departments selected their Administrative Assistant Secretary as Employment Policy Officer; these appointments were known to and approved by the President’s Committee. In the Committee’s eyes, the Administrative Assistant Secretary — who supervised budget, administration, inspection, and housekeeping functions, as well as personnel management — did not hold a position inside the division handling Interior’s personnel matters. He supervised that division (as well as others) and stood above it, on a level comparable to that of the Secretary or the Under Secretary. He was therefore considered to be “outside of the division handling the personnel matters of the department or agency concerned.”
If we were to look only at the words of the Executive Order, we might perhaps agree with plaintiff that the Administrative Assistant Secretary was too close to the run of personnel decisions within the Department to be a proper Employment Policy Officer. But we cannot prefer such a surface reading of the Order — an interpretation which is not at all conclusive — over the contrary construction contemporaneously adopted and followed by the agency responsible for enforcing the Order and the then anti-discrimination program. The Committee’s position was reasonable and reflected its values and experience. It should not now be overturned. See Power Reactor Development Co. v. International Union of Electrical Workers, 367 U.S. 396, 408 (1961); Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 315 (1933); Skidmore v. Swift & Co., 323 U.S. 134, 139-40 (1944). The result is that the Administrative Assistant Secretary cannot be held to have played an illegal role in the proceedings on the complaint of discrimination.[4]
3. Plaintiff challenges the qualifications of the three men chosen to hear his appeal (on the charges of professional incompetence) on the ground that none was a practicing lawyer and none worked in the Solicitor’s Office.[5] The Interior regulations merely provided that the hearing board *40 be “impartial.” Plaintiff does not allege that any of his board members was partial and there is no evidence to that effect. There is likewise no reason to believe that the board failed to do its duty. The members were all high-ranking-officials who held responsible posts; they heard and appraised the testimony. We cannot say that the Department was required by the dictates of basic fairness to appoint practicing lawyers to hear a claim that a lawyer was professionally incompetent.[6] The world has not yet passed into the stage at which it will be beyond the permissible realm of debate whether a professional’s performance can be evaluated by an informed layman.
4.' Plaintiff also seeks invalidation of his dismissal because the Civil Service Commission did not determine whether the Interior Department had complied with the applicable Interior regulations. At the time of plaintiff's appeal, the Commission refused to enforce such Departmental regulations. Subsequently, the Commission changed this position (following Watson v. United States, 142 Ct. Cl. 749, 162 F. Supp. 755 (1958)) and decided, prospectively, to overturn personnel actions which failed to meet departmental or agency requirements. We think that under the Lloyd-LaFollette Act, 5 U.S.C. § 652, the Commission was within its legal authority in choosing to confine its consideration, prior to September 1959, to the applicable federal statutes and Commission regulations. It was a matter of administrative discretion whether to go beyond those limits, or not; the Commission’s later policy-choice does not void the earlier, one. In any event, we have today considered and rejected plaintiff’s claim (to the extent he still presses it) that the Interior Department violated its own regulations in his case.[7] If the Commission committed error in failing to pass upon these issues, the error was a harmless one which was not to plaintiff’s disadvantage.
Plaintiff’s discharge was not tainted by any of the procedural errors he urges upon us. He is not entitled to recover and his petition is dismissed.
*41 FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Franklin M. Stone, and the briefs and argument of counsel, makes findings of fact as follows:
1. This action was filed by plaintiff to recover back pay arising out of an alleged wrongful discharge and removal on November 30, 1957, from his position as Attorney-Advisor (General), Grade GS-12, assigned to the Office of the Solicitor of the Department of the Interior (hereinafter sometimes referred to as the “Department”). Plaintiff entered the career Civil Service sometime in the year 1935. Plaintiff is a citizen of the United States, and at the time this action was filed, he maintained a residence in Washington, D.C. The parties stipulated that this case involves only the following issues:
1. Was plaintiff’s removal from his position a violation of applicable regulations of the Department of Interior in either, or both of the following respects:
a. That his removal should have been by the Solicitor ?
b. That he was removed without “a complete statement of the facts in the case” having been presented to the Solicitor ?
2. Was the designation in Departmental Order No. 2797 of the Administrative Assistant Secretary as the Employment Policy Officer in violation of Section 5 of Executive Order 10590 which states that: “The position of Employment Policy Officer shall be established outside of the division handling the personnel matters of the department or agency concerned.” ?
3. Were the three members of the Department of Interior hearing board appointed by the Administrative Assistant Secretary to hear the appeal of plaintiff in regard to the removal charges qualified to evaluate those charges?
4. Was the action of the Civil Service Commission in not considering whether the Department of Interior followed its own regulations compliance with law ?
2. At all times material herein, there was in effect Department of Interior Order No. 2596, dated November 3, 1950, which provided as follows:
*42 Subject: Delegation of authority to the Solicitor
The Solicitor of the Department of the Interior may exercise all the authority of the Secretary of the Interior respecting the legal work, the attorney positions, and the attorney personnel of the Department of the Interior and its several agencies, including agencies established by the Secretary of the Interior to perform functions under the Defense Production Act of 1950.
3.The Department of Interior Federal Personnel Manual Supplement, dated March 5, 1951, provided, in pertinent part, as follows:
Delegation of Authority
The official to whom authority has been delegated to make appointments is delegated the power to make removals to the extent of appointment authority, with the exception of those cases on which final removal action is reserved to the Office of the Secreta^ by Order 259T,[1] or by the head of the bureau. * * *
Procedure
The principal steps to be followed in the separation of an employee for unsatisfactory performance, abandonment of position, irregularities, misconduct, or other causes are:
1. Ascertain the facts.
2. Analyze the facts and propose action to be taken.
3. Inform the employee of the proposed action and provide an opportunity for him to reply.
4. Consider tire employee’s reply and determine action.
5. Advise the employee of the final action and the rights he has under the appeal system.
Analyzing the Facts and Taking Action. — The statement of facts is to be analyzed and appraised objectively by the appointing officer from the standpoint of both the Department and the employee. If the case is one that comes under the provisions of Section 3, Order 2597, it should be reported promptly to the Office of the Secretary. If the decision is that adverse action should be taken against the employee, a written, clear-cut statement of the reasons and charges must be presented to the employee. The employee is to be allowed a reasonable time to prepare a written reply and to furnish evidence if he so desires. The employee’s answer should *43 be given the same full unbiased consideration as was given to the statement of facts. After the employee’s reply has been considered by the 'appointing authority, the employee is to be notified at the earliest practicable date, in writing, of the action decided upon. These requirements apply to all employees, veteran and non-veteran, in accordance with the Lloyd-LaFollette Act as amended by Public Law 623.
4. Department of Interior Order No. 2509, dated July 18, 1952, relating to the subject of delegations of authority, provided, in pertinent part, as follows:
Seo. 1. Under Secretary, Assistant Secretaries, and Administrative Assistant Secretary, (a) The Under Secretary, the Assistant Secretaries, and the Administrative Assistant Secretary may severally exercise all the authority of the Secretary of the Interior with respect to any matters, including any defense matter concerning electric power, fishery commodities, metals and minerals, or solid fuels, which comes before any of them, except
(1) the signing of correspondence addressed to the President;
(2) the issuance of orders delegating the authority of the Secretary;
(3) the exercise of powers delegated by the President to the Secretary without any authorization for redelegation;
(4) the issuance of general regulations; and
(5) the making of appointments under section 710 of the Defense Production Act of 1950 (50 U.S.C. App., 1946 ed., Supp. IV, sec. 2160).
(b) Notwithstanding the limitation contained in sub-paragraph (2) of paragraph (a) of this section:
(1) the Under Secretary, an Assistant Secretary, or the Administrative Assistant Secretary may authorize officers or employees of the Department to sign on behalf of the United States contracts the provisions of which have been approved by the Under Secretary, the Assistant Secretary, or the Administrative Assistant Secretary ; and
(2) the Administrative Assistant Secretary may, in writing, redelegate or authorize the redelegation of such portions of the authority of the Secretary with respect to matters in the field of administrative management, including mat *44 ters relating to budget, finance, personnel (except appointments under section 710 of the Defense Production Act of 1950), management research, property management, and administrative services, as the Administrative Assistant Secretary may deem appropriate.
.5. Department of Interior Departmental Manual, dated April 6, 1955, setting forth the organizational structure of the Department of Interior, provided, in pertinent part, as follows:
Part 110 Office of the Secretary
Chapter 1 Composition and Function 110.1.1
.1 Composition. The Office of the Secretary consists of the Secretary, Under Secretary, Assistant Secretaries, Administrative Assistant Secretary, and the Solicitor and various staff divisions.
.2 Function. The Office of the Secretary provides staff advice and 'assistance to the Secretary and his assistants in carrying out their responsibilities for the establishment of policies and standards and for direction and supervision over all of the activities of the Department.
Chapter 2 Organization Structure 110.2.1
.1 Secretary. The Secretary of the Interior, as the head of an executive department, reports directly to the President and is responsible for the direction and supervision of the activities of the bureaus and other organization elements of the Department, and the Virgin Islands Corporation.
.2 Under Secretary. The Under Secretary assists the Secretary in the discharge of his duties and in the absence of the latter performs his functions. With the exception of certain matters requiring personal action by the Secretary, the Under Secretary has the full authority of the Secretary on any matter which comes before him.
.3 Assistant Secretary — Mineral Resources. * * *
.4 Assistant Secretary — Public Land Management. * * *
.5 Assistant Secretary — Water and Power Development. * * *
.6 Administrative Assistant Secretary. The Administrative Assistant Secretary discharges the duties of the Secretary with respect to administrative management and directs and supervises the Division of Ad *45 ministrative Services, Division of Budget and Finance, Division of Inspection, Division of Management Besearch, Division of Personnel Management, Division of Property Management and Division of Security. His authority extends to all matters except a few which require the personal attention of the Secretary.
A. Division of Administrative Services. The Division of Administrative Services, under the direction of the Chief Clerk of the Department, formulates and develops policies and procedures, and provides coordination, for a program of administrative services for the Department; initiates and enforces regula-lations relating to administrative services; * * *. For the Office of the Secretary, and for other organizational units by special arrangement the Division provides or performs services relating to the following: budget, finance, procurement, property management, personnel, including appointments and status changes, * * *. The Division is composed of the following branches: Central Services, Library Services, Fiscal and Special Services, and Personnel Operations.
B. Division of Budget and Finance. * * *
C. Division of Inspection. * * *
D. Division of Management Besearch. * * *
E. Division of Personnel Management. The Division of Personnel Management provides departmental leadership and staff guidance in the development and maintenance of a comprehensive personnel management program throughout the Department. It develops policies, standards, objectives, and programs designed to establish and maintain an adequate, qualified, and efficient working force. The Division provides general direction of a comprehensive program of personnel administration including position classification, labor relations, wage administration, employment, training, employee relations, program review, personnel standards, procedures and records, and safety and health; coordinates bureau personnel programs; plans and stimulates studies of personnel management improvement including executive development and training. It represents the Depart-partment before committees of Congress, the Bureau of the Budget, and other Governmental agencies; and recommends departmental action in such fields related to personnel administration as delegation of *46 authority, hours of work, overtime, political activity, leave regulations, etc. The Division is composed of the following branches: Classification, Employment, Training, Employee Eelations, and Program Eeview.
F. Division of Property Management. * * *
G. Division of Security. The Division of Security develops, in cooperation with other staff divisions in the Office of the Secretary and the bureaus, policies, procedures, and regulations for the administration of the Department’s personnel security program, * * *.
6. By memorandum dated December 6,1956, identified by subject matter as “Notification of proposed adverse action,” J. Eeuel Armstrong, then Solicitor of the Department, advised plaintiff, in part, as follows:
* * * I propose to request your dismissal and removal from the service of the United States for the good of the service, pursuant to the provisions of the Act of August 24,1912, as amended (5 IJ.S.C. 652).
In many instances you have performed your assignments in an unprofessional, unreliable, inaccurate, and unresponsive manner, and you are hereby charged with inefficiency and incompetency in the following specific cases:
t}í «Í»
Following the foregoing portion of this memorandum, the Solicitor set forth detailed facts in 10 specific cases handled by plaintiff and referred to 49 documentary exhibits attached to the memorandum, consisting principally of memoranda and letters, in support of his charges against plaintiff. The charges against plaintiff, which formed the basis for his removal, related to the professional legal competency and the accuracy, reliability, and efficiency with which plaintiff performed his assignments, and in that connection the charges also involved the unresponsive and incomplete manner in which plaintiff allegedly followed instructions given to him in connection with certain of these assignments.
7. Under date of February 4, 1957, plaintiff submitted a detailed memorandum reply to the notification of proposed adverse action sent to him by the Solicitor. There is no evidence of record that either Solicitor Armstrong, who resigned sometime prior to May 20, 1957, or his successor, considered this reply.
*47 8. By letter to plaintiff dated May 20, 1957, Mr. D. Otis Beasley, the Administrative Assistant Secretary of the Department of the Interior, advised plaintiff that the notice of proposed adverse action, dated December 5,1956, and plaintiff’s reply thereto, dated February 4,1957, had been referred to and considered by him; that his findings were that all of the charges against plaintiff had been sustained; and that in the interest of promoting the efficiency of the service, plaintiff would be removed from the service of the Department effective thirty days from the date he received the letter. This letter discussed in detail each of the charges set forth in the notice of proposed adverse action and plaintiff’s reply thereto.
The record does not disclose whether or not Mr. Beasley consulted the Solicitor or any other lawyer before he reached the decision communicated to plaintiff in this letter that the charges against him had been sustained. A copy of this letter was designated for the office of the Solicitor of the Department.
9. On or about May 27,1957, plaintiff requested a hearing on the merits of the charges of inefficiency and incompetency that had been made against him by the Solicitor and sustained by Mr. Beasley. On the same date, plaintiff filed, pursuant to Executive Order 10590, a complaint alleging religious discrimination.
10. By memorandum dated June 12, 1957, Mr. Beasley appointed a committee (hereinafter sometimes referred to as the “Committee”, or the “Board”) to hear plaintiff’s appeal as to the merits of his discharge and removal. The Committee consisted of Messrs. Thomas F. Flynn, Staff Assistant to the Secretary for Public Land Management, Grade GS-15, a member of the Bar who had not practiced law for a number of years, and was not employed in a legal capacity by the Department; Philip F. King, Assistant to the Director, National Park Service, Grade GS-14, a non-lawyer; and D. Reginald Hicks, Assistant Chief, Division of Personnel, Bureau of Reclamation, Grade GS-14, a non-lawyer. It is clear from the evidence that each of these .individuals held a position of substantial responsibility. The Committee was advised that the hearing would be held at a designated place beginning on June 13, 1957, and di *48 reeled to give plaintiff and Ins representative “an opportunity to answer the charges, to interrogate witnesses, and to testify”, and to submit its findings and recommendations to Mr. Beasley not later than June 17,1957.
11. The Department’s regulations relative to the composition of hearing boards designated to hear appeals, such as the one filed by plaintiff on the merits of his discharge, provide that when an employee requests and is granted a hearing, “an impartial board will be designated”. The regulations do not require that persons appointed to such a board have any particular education, experience, or other special qualifications. In this suit, plaintiff does not allege or assert that the board was not impartial (Finding 1, sufra) and offered no evidence that the board was not impartial.
12. The Committee (Board) held the hearing on the merits of plaintiff’s discharge and removal from his position with the Department on June 13 and 14, 1957, as directed by Mr. Beasley. Plaintiff personally attended and was represented at the hearing by counsel. Plaintiff’s complaint alleging religious discrimination was not referred to or considered by this Committee.
13. On June 21,1957, the Committee submitted to the Administrative Assistant Secretary of the Interior (Beasley) a memorandum report covering the hearing held on June 13 and 14, 1957. The report named the persons who testified at the hearing and stated, in part:
* $ * * $
* * * A stenographic transcript of the hearing was made. The witnesses called were Mrs. Ruth Van Cleve, Mr. A. M. Edwards, Miss Lucille Schwilck, and Mr. William Redmond, all members of the Solicitor’s staff. * * *
We attempted to confine the hearing to the specific charges set forth in the December 6,1956, memorandum from the Solicitor to Mr. Spector. Mr. Spector and his attorney were given the opportunity to present any matter they believed relevant to answer the charges.
After the hearing concluded, the Committee gave careful consideration to the charges of December 6, 1956 in the memorandum from the Solicitor to Mr. Spector; the answer of February 4, 1957, submitted to the Solicitor by Mr. Spector; the decision of May 20, 1957 from the *49 Administrative Assistant Secretary to Mr. Spector; and the transcript of the testimony of June 13 and 14.
The Committee unanimously finds that the charges of inefficiency and incompetency in the ten specific cases set forth in the memorandum of December 6,1956 from the Solicitor to Mr. Spector have been sustained by the preponderance of pertinent evidence before the Committee.
The Committee recommends that the decision to separate Mr. Theodore Spector from his position be sustained.
The report does not contain discussion of nor detailed findings with respect to, the charges made against plaintiff. The report shows that a Mr. Francis G-rambo, described as “Counsel for the Department”, was among those present during the hearing. The record does not disclose whether or not a copy of this report was forwarded to or considered by the Solicitor or any other lawyer in the Department.
14. By letter dated July 3, 1957, and signed by Fred A. Seaton, Secretary of the Interior, plaintiff was advised, in pertinent part, as follows:
The transcript of the hearing which was held in the Department on June 13 and 14,1957, has been reviewed. The committee which was appointed to hear your appeal reported unanimously that, in its opinion, the charges of inefficiency and incompetency in the ten specific cases set forth in the memorandum of December 6, 1956, from the Solicitor to you, have been sustained by the preponderance of pertinent evidence before the committee. The committee recommends that the decision to separate you from the service be sustained.
You are hereby advised that it is my decision to sustain your separation, and you are hereby notified that it will become effective July 31,1957.
ífc íjí ÍJÍ
You are informed of your right to appeal this decision to the Civil Service Commission if you believe that the proper procedure has not been followed in effecting your removal.
❖ * $ ‡ *
At the lower left hand comer of the letter appears the following typed notation: “NBTerry: cn 7/1/57”, and it may be reasonably concluded that the letter was dictated by someone other than the Secretary and submitted to him for his *50 approval and signature. The record does not disclose whether the person who dictated this letter did so in accordance with certain instructions given to him by the Secretary or any other person; whether the letter was reviewed by anyone other than the dictater before it was submitted to the Secretary; nor whether the Secretary consulted the Solicitor of the Department or any other lawyer before sending the letter to plaintiff. Copies of this letter were designated for the Office of the Solicitor, the Administrative Assistant Secretary’s file and plaintiff’s attorney.
15. By memorandum dated July 20, 1957, to the Department’s Deputy Employment Policy Officer, plaintiff requested a hearing on the complaint filed 'by him on May 27, 1957, alleging religious discrimination, and requested a stay of separation from the Department pending the outcome of the discrimination charge. By memorandum dated July 25, 1957, the Administrative Assistant Secretary (Beasley) notified plaintiff that the Department had granted him a hearing. On the same date, Mr. Beasley appointed a Hearing Committee (hereinafter referred to as the “Committee”), consisting of Messrs. Don H. Wheeler, Chairman, Paul H. Gantt, and Hilory A. Tolson. By letter dated August 1, 1957, directed to plaintiff’s attorney, a copy of which was sent to plaintiff, the Acting Secretary of the Interior advised that the Department would defer the finalization of plaintiff’s pending termination until the hearing on the discrimination charge had been concluded and the Committee had presented its recommendations.
16. The hearing on plaintiff’s complaint of religious discrimination was held on August 1, 1957, by the Committee appointed by Mr. Beasley. Plaintiff attended the hearing and he was represented by counsel. Observers present were Mr. Herman Edelsberg of the Anti-Defamation League of B’Nai Brith, and Milton M. Gottesman of the Jewish Community Council of Greater Washington. One Lewis A. Travis, identified in the “Transcript of Proceedings” as “Legal Adviser to the Committee”, also was present.
17. By letter dated August 23, 1957, the Administrative Assistant Secretary of the Department (Beasley) wrote plaintiff as follows:
*51 Tbe Hearing Committee established to hear evidence and render a finding of fact in connection with your complaint of discrimination on grounds of anti-Semitism has filed its findings.
It is the Committee’s conclusion that there is no factual support for the contention that your removal from office on charges of incompetency was motivated by discrimination on grounds of anti-Semitism. It is the Department’s decision, therefore, that your complaint of discrimination be denied.
Under the provisions of Executive Order No. 10590 and Secretarial Order No. 2797, you are entitled to have your case referred to the President’s Committee on Government Employment Policy for a review and advisory opinion. The Department’s adverse decision, as above stated, will not become final until the President’s Committee has made known its determination.
If it is your desire that the case be referred to the President’s Committee, please advise in writing within ten (10) days from the date hereof and we shall promptly refer the case docket in its entirety.
(18o In a memorandum dated August 30, 1957, plaintiff requested that his discrimination complaint be referred to the President’s Committee on Government Employment Policy, (see Finding 24). The action requested by plaintiff was taken by letter of the Administrative Assistant Secretary, dated September 5,1957, which forwarded the complete file and transcript of the hearing to the President’s Committee.
19. By letter dated October 11, 1957, the Executive Director of the President’s Committee on Government Employment Policy wrote the Secretary of the Interior as follows:
_ Reference is made to a letter dated September 5,1957, signed by Mr. D. Otis Beasley, Employment Policy Officer, forwarding the case file and a request for an advisory opinion on a complaint made by Mr. Theodore Spector that his removal from the position of Attorney-Advisor, GS-12, on charges of incompetency was motivated by discrimination on grounds of anti-Semitism.
After careful consideration of all the records and evidence presented in this case, it is the judgment of the Committee that on the basis of the record and evidence presented to the President’s Committee, the allegation of religious discrimination made, by Mr. Spector is not substantiated. Under the provisions of Executive Order 10590 and the regulations of this Committee, Mr. Spector *52 should be advised by you, or by your designated, representative, of the Department’s final decision on his case. A copy of such decision should be forwarded to this Committee in duplicate.
The personnel folder and the file on this complaint are returned herewith.
By direction of the Committee.
¡20. By letter dated October 16, 1957, Mr. Beasley notified plaintiff of the decision of the President’s Committee on Government Employment Policy on his charge of discrimination, and advised that the adverse decision communicated to him under date of August 23, 1957 (see Finding 17) was considered final. (As shown in Finding 15, plaintiff had requested the Department to defer its final action on the removal charge until action had been taken on the discrimination charge, and the Department had granted his request.) Action on the discrimination charge having been completed, plaintiff was removed from his position, effective November 30, 1957.
21. (a) On December 5, 1957, plaintiff timely perfected an appeal of his removal to the United States Civil Service Commission (hereinafter referred to as the “Commission”) under Part 9 of the Civil Service Regulations. In a lengthy decision issued on February 12, 1958, the Chief of the Appeals Examining Office of the Commission sustained the action taken by the Department and recommended that no change be made in the personnel action of the Department in effecting the separation of plaintiff on November 30,1957.
(b) Plaintiff appealed this decision to the Board of Appeals and Review of the Commission which rendered a decision, communicated to plaintiff under date of May 6, 1958, affirming the decision of the Chief of the Appeals Examining Office of the Commission.
(c) By letter dated July 30, 1958, to the Chairman of the Commission, followed by two other letters to the Commission, plaintiff sought further review of his removal by the Department. In a letter dated January 21, 1959, the Chairman of the Board of Appeals and Review advised plaintiff, in pertinent part:
*53 The file shows that your case has received the full appellate consideration contemplated by Part 9 of the Commission’s regulations, and that in addition the Civil Service Commissioners personally reviewed the matter of your removal.
* * * all matters over which the Commission has jurisdiction under Part 9 of the Commission’s regulations were given very careful consideration during the adjudication of your appeal. However, your allegation that the Department failed to follow its own regulations in your case was considered to be a matter outside the jurisdiction of the Commission. In this connection, the enforcement of an agency’s procedural regulations is the responsibility of the agency rather than the Commission, and we are referring your allegations to the Department of the Interior for whatever action that agency considers to be appropriate.
22. By letter dated February 19, 1959, signed by the Administrative Assistant Secretary, the Department advised plaintiff that the Civil Service Commission had referred to it, in accordance with the Commission’s Departmental Circular No. 990, the matter of plaintiff’s assertion that the Department had violated its own regulations in removing plaintiff from his position. In brief summary, this letter reviewed in detail each of the assertions of plaintiff in this regard; discussed and answered each; and advised plaintiff that the Department had concluded that it had adhered to its procedures and regulations in effecting his separation.
23. On September 18,1959, the Civil Service Commission issued Departmental Circular No. 1019, superseding Departmental Circular No. 990. Circular No. 1019, citing Watson v. United States, 162 F. Supp. 775, noted that the Court of Claims had held that the procedural regulations of an agency issued pursuant to statutory authority had the force and effect of law and must be complied with by the agency that issued them. In brief, this circular pointed out that in Departmental Circular No. 990, the Commission had announced that it would not enforce agency procedural requirements ; that the Commission had reviewed this determination, concluded that it should be changed and that in the future it would review allegations that procedural requirements of an agency had not been followed in taking an adverse personnel *54 action (removal, demotion, suspension, etc.); that such allegations would be considered by the Commission on appeal and, if the agency action was found procedurally defective, the Commission would reverse such action. It further provided that the new policy was effective with respect to appeals under consideration on the date of the circular (i.e., September 18,1959) or received on or after that date.
24. The President’s Committee on Government Employment Policy (hereinafter sometimes referred to as the “President’s Committee” or the “Committee”) was established by Executive Order 10590, dated January 18, 1955. In brief summary, the overall purpose of this Order was to further the policy of the executive branch of Government that equal opportunity be afforded all qualified persons for employment in the Federal Government, and that there be no discrimination against any employee or applicant because of race, color, religion, or national origin. The scope of the authority of the President’s Committee extended only to the making of recommendations and rendering advisory opinions to heads of the departments or agencies concerned (Secs. 2(b) and 3(a). The responsibility for effectuation of the policy of the Order was placed on the head of each department or agency, whose obligation it was to prescribe regulations for the administration of the policies prescribed by the Order which would provide for an appeal to the proper authorities, a fair hearing and a just disposition of a complainant’s case (Sec. 3(a)). The Order also provides that a copy of such regulations shall be filed with the Committee (Sec. 3(b)) ; that the head of each department and agency shall designate an official of his department or agency as Employment Policy Officer and such Deputy Employment Officers as necessary (Sec. 5); and that “The position of Employment Policy Officer shall be established outside of the division handling personnel matters of the department or agency concerned” (Sec. 5). The duties of the Employment Policy Officer are set forth in the Order (Sec. 6); and, in general, these duties were to assist the head of the Department or agency in carrying out the provisions of the Order.
25. Pursuant to Section 3(a) of Executive Order 10590, the President’s Committee issued its “Regulations and Pro *55 cedures.” In essence, they merely repeated or implemented the provisions of the Executive Order.
26. As required by the Executive Order (Secs. 3(a) and 3(b)) and the regulations and procedures issued by the President’s Committee, the Department of the Interior, on August 9, 1955, issued a set of regulations governing the Department’s non-discrimination policy. Section 4 of the regulations designated the Administrative Assistant Secretary as the Department’s Employment Policy Officer. It is this designation which gives rise to the only issue in the instant suit relating to the discrimination charge proceedings (set forth as issue 2 in Finding 1). At all times material, Mr. D. Otis Beasley was the Employment Policy Officer of the Department.
27. Under date of September 20, 1955, the Administrative Assistant Secretary of the Department (Beasley) forwarded a copy of the Department’s non-discrimination regulations to the President’s Committee on Government Employment Policy. In a letter dated September 27, 1955, directed to “Mr. D. Otis Beasley, Employment Policy Officer, Department of the Interior,” Miss Gwendolyn Tise, who, at all times material during the year 1955 and, for practical purposes, the early part of 1956, was the Acting Executive Director of the President’s Committee (Grade GS-12), stated, in pertinent part:
Thank you for your letter of September 2031955, with which you forwarded copies of the regulations of the Department of the Interior for enforcement of the nondiscriminatory employment policy, * * *. Your letter will be brought to the attention of the Committee at its next meeting.
A review of the Department’s procedures reveals that they are in substantial conformity with the regulations of the Committee. * * *
* * * * *
28. The Chairman of the President’s Committee resided in Chicago, Illinois, and the Committee met only once or twice a month. All of the active day-to-day operations of the Committee were carried on by Miss Tise, who, as Acting Executive Director, had the same authority to act as the Executive Director would have been empowered.
*56 Mr. W. Arthur McCoy, a member of the Committee, testified that Miss Tise was authorized and directed to review all departmental and agency regulations submitted to the Committee, and to issue letters of approval such as the one she sent to Mr. Beasley under date of September 27, 1955, approving the Department’s regulations (see Finding 27). This letter was sent to Mr. Beasley without the specific knowledge or advance approval of the Committee.
It is clear from the evidence that as a matter of regular routine Miss Tise reviewed and approved, disapproved or suggested changes in, all regulations submitted to the Committee, without presenting them to the Committee for consideration unless she felt a particular regulation posed a special problem. The Committee was aware and approved of this practice followed by Miss Tise; and she was acting within the scope of the authority delegated to her by the Committee in sending the above-mentioned letter of approval to Mr. Beasley.
29. Miss Tise is not a lawyer. She entered Federal Government service with the Civil Service Commission in the year 1933, and from about 1946 until she was named Acting Director of the Committee in 1955 she was employed as an Examiner with the Fair Employment Board of the United States Civil Service Commission. This Board was created, by a previous Executive Order, to carry out functions that were practically the same as those required under the new superseding Executive Order 10590. The record does not disclose the exact nature of the duties performed by Miss Tise during the years she was employed by the Commission prior to the time of her assignment to the President’s Committee.
30. There is no authority of record for the President’s Committee to waive a provision of an Executive Order, and Miss Tise knew of no such authority. Miss Tise was not authorized by the Committee, or in any other manner, to waive any regulation or any provision of an Executive Order.
31. The President’s Committee never specifically met and approved the Department’s regulations, approved by Miss Tise, which (in Section 4) designated the Administrative Assistant Secretary of the Department as the Department’s *57 Employment Officer (Findings 26 and 27), nor the appointment of Mr. Beasley as the Department’s Employment Policy Officer. However, Mr. McCoy (identified in Finding 28, supra), testified that the members of the Committee subsequently learned that Mr. Beasley was the designated Employment Policy Officer of the Department and that this designation met with their approval. (See Findings 32, 34, 36 and 37, covering additional facts and testimony given by Mr. McCoy related to the foregoing finding.)
32. The evidence shows that at all times material, the Under Secretary of the Department ranked between the Secretary and the Administrative Assistant Secretary; that while the Administrative Assistant Secretary was not the Personnel Director of the Department nor the head of the Division of Personnel, the person holding the position of Administrative Assistant Secretary of the Department was the immediate superior over the head of the Division of Personnel, as well as over the heads of several other divisions; and it is reasonable to conclude from the foregoing and other facts of record that in discharging his duties, responsibilities, and functions, the Administrative Assistant Secretary was directly and regularly concerned with personnel procedures and policies, among other things (see Finding 5).
33. (a) On January 17, 1956, the President’s Committee held a conference (sometimes hereinafter referred to as a “meeting”), in Baltimore, Maryland. A document entitled “Beport on Baltimore Conference” reflects that the following persons were present:
Mr. Maxwell Abbell, Chairman of the Committee and Conference Leader
Dr. Archibald J. Carey, Jr., Vice Chairman of the Committee
Mr. W. Arthur McCoy, Committee Member Mrs. Jane Warnock, Alternate Committee Member Dr. Boss Clinehy, Executive Director of the Committee Miss Gwendolyn Tise, Assistant Executive Director of the Committee
Bepresentatives of the following Government Departments and Agencies also attended:
Department of Agriculture
Department of the Air Force
*58 Department of tbe Army
Department of Commerce
Department of Health, Education and Welfare
Department of the Interior
Department of Justice
Department of Labor
Department of the Navy
Post Office Department
Treasury Department
Federal Communications Commission
Federal Housing Administration
General Services Administration
Selective Service System
Veterans Administration
The names of these representatives do not appear in the minutes nor in any other part of the record.
(b) The purpose of the aforesaid meeting was to acquaint field personnel of the departments and agencies with the non-discrimination policy set forth in the Executive Order, to acquaint the field operating personnel with methods of implementing that policy and to place the President’s Committee in direct contact with the problems that the field personnel encountered in this matter.
34. In accordance with instructions given to Miss Tise prior to the conference held in Baltimore, Maryland, on January 17, 1956, she took notes during the meeting and subsequently prepared a report (referred to in Finding 33) which she testified constituted the “minutes” of this meeting. The minutes summarized remarks made by the Chairman and other members of the President’s Committee. The minutes disclose that there was considerable discussion of several topics, identified and numbered as “Items”. They were written up in what appears to have been summary question and answer form. The questions related to various matters and problems concerning which the Department and Agency representatives in attendance desired information. The names of the persons who asked particular questions are not shown in the minutes.
Miss Tise and Mr. McCoy testified relating to the question and answer discussion that took place during the meeting. As best it can be determined from the record, the answers to the questions were given by one or more of the members *59 of tbe panel, comprised of Miss Tise, Mr. McCoy and the other persons connected with the Committee (identified in Finding 33(a)); but the minutes do not specifically disclose the identity of the person or persons who answered particular questions. The questions and answers most pertinent to the issues involved in this case relate to the subject of “Employment Policy Officers” and appear under “Item No. 4”. However, certain other portions of the minutes are considered particularly pertinent and helpful in showing the presentations made, subjects discussed, and the format of the minutes. Accordingly, the following extracts from the minutes are quoted:
Dr. Carey stated that America must demonstrate by its own performance that people will be judged on their character and achievement rather than on some other criteria. President Eisenhower has given leadership to this policy of non-discrimination, 'and has appointed two committees to implement it. * * * The other committee is our Committee on Government Employment Policy, which was created for the purpose of preventing discrimination in the hiring, promotion and firing of persons who are employed by the Federal government. * * * He [Carey] emphasized that it is not the purpose of the Committee to secure favors for any individual or to espouse the cause of any undeserving person. Its purpose is to make certain that the deserving person is not prevented from securing what is due him because of prejudice or fear of embarrassing reactions. Its purpose is also to make it known that the President stands behind the principle of according to each person working for the government the benefits to which he is entitled.
# ‡ sjs
Dr. Carey closed his remarks by requesting the members of the conference to be frank in setting forth their problems. He then introduced Mr. McCoy.
Mr. McCoy stated that this policy of non-discrimination was an important phase in the merit system of the government. He mentioned the passage of the Civil ervice Act, which established the principle of merit in Federal government employment matters and pointed out that discrimination is a violation of that principle. * * * Mr. McCoy traced the history of the nondiscriminatory ordinances in the Federal Government, *60 and called attention to the fact that Executive Order 10590 placed the responsibility for the effectuation of this policy with the agency itself. He stated that the Committee can only be helpful to the agencies, it cannot direct the agencies to do anything. According to Mr. McCoy, what is most needed is a program of education and persuasion to prevent acts of discrimination. It is ■the principal duty of the Committee to provide all government officials with all the leadership,. standards, guidelines and help that they need in carrying out this policy. * * *
* * * ❖ *
There was considerable discussion of the items ron the agenda by the members of the conference. This discussion is summarized below:
Item No. 4. Eole of Deputy Employment Policy Officer in this program.
a. His relationship to the head of the local establishment
b. His relationship to the Personnel Office
c. His duties.
Why is the Deputy Employment Policy Officer not a part of the Personnel Division ? It was explained that all personnel actions are processed in the Personnel Office and that for that reason it would be better to have the employment practices of the agency audited by someone not in that office. The representative of the Department of the Army pointed out that for the same reason the Army’s grievance procedures have been revised to have the Personnel Division representative serve as a consultant to the grievance committee, rather than as chairman of such a committee.
Is there any prohibition against the designation of an assistant to the Deputy Employment Policy Officer? No. In fact it is advisable for better implementation of the program.
Hí Hi if- Hi Hi
From how low in the agency echelon of officials should a Deputy Employment Officer be appointed ? That is a matter which is left to the discretion of the Department.
* « :¡! * *
Does the Deputy Employment Policy Officer merely listen to complaints or does he perform other functions ? He should try to determine whether or not the policy is actually being carried out in the establishment. The Committee is considering the issuance of a check list *61 for use by Employment Policy Officers and their deputies in carrying out their functions. Since the Deputy Employment Policy Officer should have the authority of the head of the establishment behind him, he should be in a position to take whatever action he deems necessary to insure the carrying out of this policy.
What is the review function at the intervening echelon? When a complaint comes up through channels from a local establishment to the Employment Policy Officer, the intervening echelon should review the complete file, and if it believes that corrective action should be taken, it may direct such action. It also may require additional information on the complaint before forwarding it to the Employment Policy Officer.
In view of the fact that the non-discrimination program is really a part of the personnel program of an agency, why is it necessary to go outside the chain of command to appoint a Deputy Employment Policy Officer who is not a part of the Personnel Division ? The Executive order directs that the Employment Policy Officer not be designated from the division handling the personnel matters of the department or agency. This prohibition would, of course, also apply to Deputy Employment Policy Officers. It is not necessary, however, to go outside the chain of command to appoint the Deputy Employment Policy Officer, since the official who has general jurisdiction over the personnel functions may be designated. For example, several cabinet officers have designated the Assistant Secretary for Administration, who would have line authority over the personnel function, as the Employment Policy Officer.
^ ^ ijs #
Mr. McCoy advised the conference members that a digest of the meeting would be sent to them. * * *
35. Miss Tise testified that after she prepared the Eeport, or “minutes”, she submitted it for approval to Dr. Eoss Clinchy, who assumed the office of Executive Director January 2,1956, on which date Miss Tise reverted to the position of Assistant Executive Director of the Committee. According to Miss Tise, at this time the procedures for the preparation and issuance of minutes covering conferences such as the one held at Baltimore had not been firmed up, and in the interest of saving time Dr. Clinchy approved the minutes in the form submitted to him by Miss Tise. Subsequent to Dr. *62 Clinchy’s approval of the minutes, Miss Tise prepared mimeograph copies thereof and sent them to representatives of the Departments and Agencies listed thereon, to the central offices of these Departments in Washington and to all the members of the President’s Committee. This distribution was made in accordance with directions which had been given by the Committee, pursuant to agreement reached prior to the conference.
The minutes were not signed by the Chairman of the Committee, any other member of the Committee, Dr. Clinchy, Miss Tise, or anyone else; and copies of the minutes were mailed without letters of transmittal. Nor were the minutes submitted to the Committee as a whole or to the Chairman or any other Committee member, for clearance, before Dr. Clinchy approved them and directed their distribution.
Mr. McCoy testified that he received copies of the minutes in the mail; that they were “official minutes” of and represented his recollection of what happened at, the meeting; and that the minutes set forth the official position of the President’s Committee on the various matters discussed therein.
36. Plaintiff raised vigorous objections to the testimony presented by Miss Tise and Mr. McCoy relative to several matters, particularly with respect to the interpretation and application by the President’s Committee of Section 5 of Executive Order 10590. The parties are in sharp dispute as to what each of the witnesses actually stated and intended to convey by some of their testimony. Admittedly, the testimony given by both of these witnesses left something to be desired in certain instances and respects; and the testimony relative to the above-mentioned issue, especially, is somewhat conflicting, confused, and uncertain. However, considering the testimony in context and the entire record as a whole, it is reasonably clear that in interpreting and applying Section 5 of the Executive Order, the Committee considered the designation of the Administrative Assistant Secretary of a department or agency as its Employment Policy Officer to be within the purview of the Order, and that there was no conflict between the wording of the Order and the designation of such an official as the Employment Policy Officer. The Committee not only viewed such an ap *63 pointment as within the purview of the Order, but considered it to be highly desirable.
The Committee’s preference was for the Employment Policy Officer to be an official of the highest possible level. The Order required the person designated to this position to report directly to the head of the department or agency on matters relating to the carrying out of the non-discrimination policy and the position was considered an important one. To illustrate the importance of the position, it is significant to note that in one agency, The Selective Service Administration, the head of the Agency, General Hershey, designated himself as Employment Policy Officer. In the Departments of Commerce and Agriculture, as well as in the Department of the Interior, the Administrative Assistant Secretary was designated as Employment Policy Officer; and these appointments were known to and met with the approval of the Committee. While in many instances a lower echelon employee was designated as Employment Policy Officer, this was not the preference or responsibility of the Committee which could only advise the Departments to select high level personnel, which the Committee did from time to time.
37. Prior to being appointed to the President’s Committee on Government Employment Policy in 1955, Mr. McCoy had been Chairman of the Fair Employment Board of the Civil Service Commission. This Board had been set up by a previous Executive Order to deal with discrimination within the Government due to race, color, religion and national origin.[2]
Mr. McCoy testified that during the drafting of Executive Order 10590 which superseded the earlier Order mentioned above, he was consulted regarding its provisions and asked for his comments and suggestions in regard thereto, which he gave. Mr. McCoy was familiar with the basis for the inclusion of the provisions of Section 5 in the Order, and he stated that the purpose of this Section was only to preclude an individual in the Personnel Office of a department or agency who handled personnel matters directly on a day-today basis from being designated Employment Policy Officer. The President’s Committee interpreted and applied the pro *64 visions of said Section 5 consistent with the purpose stated by Mr. McCoy; that is, the Committee considered the designation of the Director of Personnel or a member of the Personnel Office of a department or agency as a violation of the Executive Order, but not the designation of the Administrative Assistant Secretary, or comparable high-level officials. Mr. McCoy testified in effect that to the 'best of his knowledge, “the Administrative Assistant to the Secretary, in most departments and agencies,” had administrative duties involving a number of problems relating to various functions, including not only the work of the personnel division, but also budget and housekeeping matters. The Committee did not consider the Administrative Assistant Secretary an official charged with general over-all administrative responsibilities with respect to several divisions, including, among others, the Personnel Division of a particular department, to be in the Personnel Division of such department.
In his testimony, Mr. McCoy interchangeably used the words, “Administrative Assistant to the Secretary” and the “Administrative Assistant Secretary.” It is clear that Mr. McCoy considered the position of “Administrative Assistant Secretary”, the title held by Mr. Beasley, to be outside the Personnel Division of the Department of the Interior; that Mr. McCoy and other members of the Committee were acquainted with Mr. Beasley, knew he held the position of Administrative Assistant Secretary and the functions performed by him, were pleased with his designation as Employment Policy Officer of the Department, and did not interpret Section 5 of the Executive Order in such a manner as to consider this designation to be a violation of said Section 6.
CONCLUSION 0E LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and the petition is therefore dismissed.

 This Order, dated January 18, 1955, declared that the policy of the Executive Branch was that there be no discrimination against employees because of race, color, religion, or national origin. The President’s Committee on Government Employment Policy was established, and procedures were set up for passing on charges of discrimination.

 Defendant contends that the Assistant Administrative Secretary was also delegated authority to remove Interior personnel in plaintiff’s class.

 For the same reason, there is no force to plaintiff’s assertion that he was removed without “a complete statement of the facts in the ease” having been presented to the Solicitor. The Secretary had such a statement before him— through the initial letter of charges; plaintiff’s answer ; the Administrative Assistant Secretary’s letter of May 20, 1957, sustaining the charges; the transcript of the hearing on the allegations of inefficiency and incompetence; and the report of the committee which heard those charges.

 There is no suggestion -that, in connection -with these proceedings, the Administrative Assistant Secretary acted partially or in biased fashion.

 One member was a lawyer who had not acted as such for some time.

 under the statutes and Civil Service Commission regulations, the Department was not obligated to grant any formal hearing at all. Cf. Hart v. United States, 148 Ct. Cl. 10, 13, 284 F. 2d 882, 684 (1960).

 If there were other procedural irregularities plaintiff desired to present, he could have urged them in this court along with the claims he has pushed.

 Order 2597 is not in tlie evidence of record; but it does not apepars that this case comes within the exception stated.

 This is the same Board to -which Miss Tise was assigned as set forth in Finding 29, supra.