**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JOSE C. YBARRA,
      Appellant,

    v.

DEPARTMENT OF JUSTICE,
      Agency.

DOCKET NUMBER
CH-0752-17-0422-I-2

DATE: March 21, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lawrence A. Berger</u>, Esquire, Glen Cove, New York, for the appellant.

<u>Chad Y. Tang</u>, Esquire, Washington, D.C., for the agency.

<u>Joy E. Williams</u>, Chicago, Illinois, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the appellant's removal for off-duty misconduct. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED in paragraph 11 below regarding the issue of nexus, we AFFIRM the initial decision.

## BACKGROUND

¶2        The appellant was a preference eligible GS-13 Special Agent for the agency's Federal Bureau of Investigation (FBI). *Ybarra v. Department of Justice*, MSPB Docket No. CH-0752-17-0422-I-2, Appeal File (I-2 AF), Tab 5 at 16. The appellant worked cases involving crimes against children and had done so for 10 years at the time of the events underlying this appeal. I-2 AF, Tab 13 at 23. On February 15, 2017, the agency's Office of Professional Responsibility (OPR) proposed the appellant's removal based on one charge of unprofessional off-duty conduct. I-2 AF, Tab 7 at 17-38. The agency specified that, during the past year, the appellant had made persistent and inappropriate advances toward two female employees at two different stores (a cashier at a Meijer's grocery store and a service worker at a Dairy Queen), both of whom had separately complained to the local police about the appellant's conduct. *Id.* at 20-23, 27-28, 31-32. OPR brought four other charges based on additional alleged misconduct, including the appellant's failure to report contact that he had with the police concerning the two store employees, lack of candor with regard to these same incidents, several unwanted sexual advances toward colleagues, profane outbursts during a firearms

training session, the appellant's role in a domestic disturbance between his son's mother and a female neighbor with whom the appellant was having a relationship, and unauthorized use of an FBI database to obtain the telephone number of a former female investigation subject. *Id.* at 18-20, 26-30. OPR, however, did not consider these four other charges in proposing the appellant's removal. Rather, it considered these other charges individually, stating that it would have proposed various levels of discipline for each of them but did not do so in light of the proposed removal for unprofessional conduct off-duty. *Id.* at 32-35.

¶3 On May 19, 2017, after the appellant responded to the proposal, the Assistant Director of OPR issued a decision removing the appellant. I-2 AF, Tab 5 at 17-40. Consistent with the proposal letter, the deciding official considered all of the alleged instances of misconduct in isolation, determining that the inappropriate encounters with the store employees warranted removal, and in light of that, the other alleged offenses did not warrant separate sanctions. *Id.* at 34-37.

¶4 The appellant filed a Board appeal contesting the merits of the agency's action. *Ybarra v. Department of Justice*, MSPB Docket No. CH-0752-17-0422-I-1, Initial Appeal File (IAF), Tab 1. Shortly thereafter, the administrative judge dismissed the appeal without prejudice to allow the appellant to pursue an internal appeal to the agency's Disciplinary Review Board. IAF, Tabs 8-9. The Disciplinary Review Board affirmed the removal, and the appellant refiled his appeal. I-2 AF, Tab 1, Tab 5 at 8-10. He waived his right to a hearing. I-2 AF, Tab 17 at 4.

¶5 After the close of the record, the administrative judge issued an initial decision sustaining the removal. I-2 AF, Tab 22, Initial Decision (ID). She found that the agency proved its charge of unprofessional conduct off-duty, ID at 11-14, that the agency established a nexus between that conduct and the efficiency of the service, ID at 14-17, and that the agency showed that the removal penalty was reasonable, ID at 17-24. The appellant has filed a petition for review, disputing

the administrative judge's nexus and penalty analyses. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

## ANALYSIS

¶6        In an appeal of an adverse action under 5 U.S.C. chapter 75, the agency bears the burden of proving by preponderant evidence that its action was taken for such cause as would promote the efficiency of the service. *MacDonald v. Department of the Navy*, 4 M.S.P.R. 403, 404 (1980); 5 C.F.R. § 1201.56(a)(1)(ii). To meet this burden, the agency must prove its charge, establish a nexus between the charge and the efficiency of the service, and demonstrate that the penalty imposed was reasonable. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). On petition for review, the appellant does not dispute that the agency proved its charge of unprofessional conduct off-duty. For the reasons explained in the initial decision, we agree with the administrative judge that the agency proved its charge, and because the appellant does not challenge this finding on review, we do not address it here. ID at 11-14; *see Dobert v. Department of the Navy*, 74 M.S.P.R. 148, 150 n.1 (1997); 5 C.F.R. § 1201.114(b) ("The Board normally will consider only issues raised in a timely filed petition or cross petition for review."). The appellant does, however, challenge that administrative judge's findings on nexus and penalty. We address those issues in turn.

The agency established nexus.

¶7        Not every instance of off-duty misconduct bears a nexus to the efficiency of the service. An agency may show nexus between off-duty misconduct and the efficiency of the service by three means: (1) a rebuttable presumption in certain egregious circumstances; (2) preponderant evidence that the misconduct adversely affects the appellant's or coworkers' job performance or the agency's trust and confidence in the appellant's job performance; or (3) preponderant evidence that the misconduct interfered with or adversely affected the agency's mission.

*Hoofman v. Department of the Army*, 118 M.S.P.R. 532, ¶ 16 (2012), *aff'd,* 526 F. App'x 982 (Fed. Cir. 2013).

¶8      In this case, the administrative judge found that the appellant's off-duty conduct was not sufficiently egregious to carry a presumption of nexus. ID at 15. Nevertheless, she found that the agency established nexus because the appellant's misconduct contravenes the agency's primary mission to protect people. ID at 16. She found that this was particularly so given that the Dairy Queen Service worker was 16 years old, and the appellant was specifically tasked with enforcing Federal statutes to protect children under the age of 18. ID at 16. She further found that the appellant's misconduct adversely affected the trust and confidence of his supervisors and that several local law enforcement agencies indicated that they no longer wished to work with the appellant. ID at 17.

¶9      On petition for review, the appellant argues that his off-duty conduct consisted of mere flirtation and was not so serious as to bear a nexus to his employment. PFR File, Tab 1 at 10. As we read the appellant's argument, it appears to pertain to whether a presumption of nexus should arise. *Id.* at 9-10. However, as explained above, the administrative judge already found that there was no presumption of nexus. ID at 15. The appellant does not address the connections that the administrative judge found between his misconduct and the agency's mission, the trust and confidence of his supervisors, or the agency's relationship with local law enforcement. ID at 16-17. We therefore find that the appellant's arguments provide no basis to disturb the initial decision.

¶10      Having reviewed the record and the administrative judge's analysis, we agree with her that the agency established a nexus between the appellant's off-duty misconduct and the efficiency of the service. First, we agree with the administrative judge that the agency established nexus by showing that the appellant's conduct undermined his supervisors' trust and confidence in him and his ability to perform his duties as an FBI Special Agent. ID at 17; I-2 AF, Tab 7

at 31-32; *see Adams v. Defense Logistics Agency*, 63 M.S.P.R. 551, 555-56 (1994); *Royster v. Department of Justice*, 58 M.S.P.R. 495, 499-500 (1993).

¶11     Second, we agree that the agency has established nexus by showing that the appellant's conduct adversely affected its mission. Specifically, the appellant's interactions with the two store employees came to the attention of the Charlotte, Michigan Police Department, which expressed discomfort at continuing to work with the appellant. ID at 17; I-2 AF, Tab 7 at 31, Tab 10 at 62-68. *Thompson v. Department of Justice*, 51 M.S.P.R. 43, 50 (1991) (finding removal appropriate where, among other things, the appellant's off-duty misconduct adversely affected the agency's relationship with local law enforcement agencies). Furthermore, we agree with the administrative judge that the appellant's persistent and inappropriate advances toward a 16-year-old Dairy Queen employee were directly opposed to the agency's mission of preventing the exploitation of minors. ID at 16; *see Kruger v. Department of Justice*, 32 M.S.P.R. 71, 74 (1987) (finding that off-duty misconduct that is directly opposed to the agency's mission has a nexus to the efficiency of the service on the basis that it adversely affects the agency's mission); *see also Allred v. Department of Health and Human Services*, 786 F.2d 1128, 1131-32 (Fed. Cir. 1986) (finding nexus based on the appellant's conviction for off-duty child molestation, given that the mission of the agency was to administer health and social services to disadvantaged persons like the victim of the appellant's offense). Finally, we modify the initial decision to add that the appellant's persistent and inappropriate advances toward the Meijer's cashier adversely affected the agency's reputation because that individual was aware that the appellant was an FBI agent. I-2 AF, Tab 10 at 66; *see Jones v. Government Printing Office*, 13 M.S.P.R. 365, 369 (1982) (finding nexus where the appellant's off-duty misconduct affected the public reputation of the agency).

The removal penalty is within the tolerable limits of reasonableness.

¶12        Because the agency's only charge is sustained, the Board's authority to review the penalty is limited. *Cantu v. Department of the Treasury*, 88 M.S.P.R. 253, ¶ 4 (2001). Specifically, the Board reviews an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Id.* In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility but to assure that management judgment has been properly exercised. *Id.* Thus, the Board will disturb an agency's chosen penalty only if it finds that the agency failed to weigh relevant factors or that the agency's judgment clearly exceeded the limits of reasonableness. *Id.*

¶13        In this case, the administrative judge found that the appellant's offenses demonstrated a serious lack of judgment, especially considering that the appellant harassed a 16-year-old service worker at the Dairy Queen a mere 3 months after the local police had warned him about bothering a young cashier at Meijer's. ID at 18-19. In light of the agency's mission to protect children, she considered the Dairy Queen service worker's age to be an aggravating factor. *Id.* She also found that the damage that the appellant's conduct caused to the agency's relationship with local law enforcement was an aggravating factor and that the appellant's status as a law enforcement officer weighed heavily against him. ID at 19. The administrative judge further found that the appellant had been repeatedly warned about such behavior in the past, to include a 45-day suspension in 2003, for, among other things, making sexually inappropriate remarks to female colleagues. ID at 19-21; I-2 AF, Tab 11 at 82-88. She found mixed evidence relating to the appellant's rehabilitative potential, including on the one

hand the appellant's acknowledgment of wrongdoing and expressions of remorse, and on the other hand the absence of any concrete steps to amend his behavior and his attempt to deflect responsibility for his own misconduct onto the 16-year-old Dairy Queen service worker and her mother. ID at 21-23. Considering these facts together, the administrative judge concluded that the appellant had poor rehabilitative potential. ID at 23. She also found that removal fell within the prescribed range for the charged offense, according to section 5.21 of OPR's Offense Code, which covers off-duty misconduct. ID at 20. The administrative judge acknowledged the appellant's 18 years of service with the agency, his excellent job performance, and the difficult personal circumstances that he was facing at the time, but she found that the deciding official considered these mitigating factors and that they did not provide a sufficient basis to disturb the penalty determination. ID at 19-20, 23-24.

¶14 On petition for review, the appellant notes that, although the agency charged him with a number of offenses, it based its action solely on the charge relating to his interactions with the two female store employees. PFR File, Tab 1 at 5. In other words, "[a] separate selected penalty was imposed for each offense code violation, and the sanction of removal was selected only for the Offense Code 5.21 violation." *Id.* He asserts that the administrative judge failed to address this argument below. *Id.* The appellant asserts that the standard penalty for a 5.21 violation is a 5-day suspension and that the agency imposed the removal penalty because it considered a 45-day suspension 14 years prior to constitute "serious aggravation." He argues, however, that this prior discipline was too remote in time to constitute an aggravating factor. PFR File, Tab 1 at 5-6; I-2 AF, Tab 5 at 32-33. He argues that the deciding official considered that his behavior occurred over an extended period of time and that there was a concern about the appellant's reputation with the local law enforcement community, but she did not consider these other factors to be "serious." *Id.* at 7. The appellant also emphasizes the mitigating factors in this case, particularly his

excellent performance history, and argues that his past performance constitutes evidence of his rehabilitative potential. *Id.* at 8.

¶15    As an initial matter, we agree with the appellant that the agency in this case took an unusual approach to its disciplinary action. PFR File, Tab 1 at 5. As far as we are aware, the universal practice in Federal employee discipline has always been to consider multiple charges in the aggregate. *See, e.g., Brownell v. United States*, 164 Ct. Cl. 406, 407 (1964); *Elchibegoff v. United States*, 123 Ct. Cl. 709 (1952); *Lellmann v. United States*, 37 Ct. Cl. 128, 131-32 (1902); *Bartlett v. U.S. Postal Service*, 12 M.S.P.R. 225, 226 (1982); *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶ 3 (2016). The agency in this case took the opposite approach, assessing each charge in isolation and proposing the appellant's removal based solely on what it considered to be the most serious one. *See supra* ¶ 2. Notwithstanding, the Board is required to review the agency's decision in an adverse action solely on the grounds invoked by the agency; the Board may not substitute what it considers to be a more adequate or proper basis. *Byers v. Department of Veterans Affairs*, 89 M.S.P.R. 655, ¶ 22 (2001). Because the agency has expressly chosen to overlook the large majority of misconduct alleged in its notice of proposed removal, we base our decision solely on the single charge of unprofessional conduct off-duty. That being said, we disagree with the appellant that the administrative judge failed to consider this in reaching her decision. PFR File, Tab 1 at 5. The administrative judge explicitly noted that the four remaining charges did not figure into the removal.[2] ID at 3-9. Nor is there any indication that the administrative judge or the agency considered these

---

[2] The administrative judge stated that the agency imposed separate suspensions based on the four remaining charges. ID at 4, 6, 8-9. This finding does not appear to be supported by the record, given that OPR stated that it "would normally propose" suspensions for the other four charges, but was "not imposing a separate sanction" in this case in light of the proposal to remove. IAF, Tab 7 at 32-35. In any event, we find that this issue is immaterial because the only matter before the Board is the appellant's removal.

matters in their penalty analyses. ID at 17-24; IAF, Tab 5 at 32-37, Tab 7 at 30-35.

¶16 We next address the agency's table of penalties as contained in OPR's Offense Code. Despite its heavy use of the Offense Code in structuring this adverse action, the agency has not submitted a copy of it for the record. Nevertheless, the agency's description of what the Code contains does not appear to be in dispute. According to the agency, section 5.21 of the Offense Code provides that an employee is prohibited from:

> [e]ngaging in conduct, while off duty, which dishonors, disgraces, or discredits the FBI; seriously calls into question the judgment or character of the employee; or compromises the standing of the employee among his peers or his community.

IAF, Tab 7 at 27. The Code further states that the "standard penalty" for violating section 5.21 is a 5-day suspension, although the full range of penalties, from oral reprimand to removal, is available depending on the circumstances. *Id.* at 31. The appellant is correct that the Offense Code is written so as to make a 5-day suspension the baseline penalty for section 5.21 off-duty misconduct. PFR File, Tab 1 at 5-6. However, we do not find this generic provision or its 5-day "standard penalty" particularly instructive as to what penalty is appropriate under the specific facts of this case. The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 307 (1981) (finding that agency tables of penalties should not be applied so inflexibly as to impair consideration of other factors relevant to the individual case). We do find, however, that because the removal penalty is available for a section 5.21 violation, the agency is not constrained by the Offense Code from removing the appellant.

¶17 Regarding the appellant's disciplinary record, the administrative judge acknowledged but rejected the appellant's argument that his 2003 suspension was too remote in time to be considered an aggravating factor in his

2017 removal. ID at 19. On petition for review, the appellant disputes this finding, relying on *Kehrier v. Department of Justice*, 27 M.S.P.R. 477 (1985), and *Bennett v. Department of Transportation*, 15 M.S.P.R. 686 (1983), for the proposition that discipline more than 10 years old is not probative in a penalty analysis. PFR File, Tab 1 at 6 7. In *Kehrier*, the presiding official found that the appellant's suspension 10 years prior was too remote in time to be considered in assessing the penalty for the adverse action under appeal. 27 M.S.P.R. at 479-81. In addressing this issue, the Board stated that the suspension "may have been deemed too remote in time" but that the issue of prior discipline was immaterial to the outcome of the appeal. *Kehrier*, 27 M.S.P.R. at 480 n.1. Thus, the Board in *Kehrier* did not directly address whether the appellant's prior discipline was, in fact, too remote in time to consider, and we find that this case lends weak support to the appellant's argument. In *Bennett*, the appellants argued that they were treated disparately from individuals who committed similar misconduct 10 years prior, but the Board found that the prior incident was too remote in time to constitute a substantially similar situation. 15 M.S.P.R. at 687. We find that *Bennett* is inapposite because it concerns a different penalty factor than the one at issue here, i.e., disparate penalty rather than disciplinary record. *See generally Douglas*, 5 M.S.P.R. at 305-06.

¶18    The agency counters the appellant's argument, relying on *Lewis v. Department of the Air Force*, 51 M.S.P.R. 475 (1991). PFR File, Tab 3 at 11-12. In *Lewis*, the administrative judge found that a suspension that occurred 2 1/2 years prior was too remote in time to be considered an aggravating penalty factor, but the Board disagreed. 51 M.S.P.R. at 485. The Board explained that it would discount prior discipline if there were an agency rule prohibiting consideration of such matters beyond a certain period of time, but the applicable rule in that case only barred consideration after 3 years.[3] *Id*. We agree with the

---

[3] There does not seem to be any agency rule in this case that would prohibit consideration of the appellant's 2003 suspension.

agency that the language in *Lewis* seems to suggest that passage of time can never be a sufficient reason by itself to discount prior discipline, but we also agree with the appellant that *Lewis* is distinguishable from the instant appeal on the facts because a much greater amount of time had passed since the suspension at issue here than the one at issue in *Lewis*. PFR File, Tab 1 at 7.

¶19     Having considered the parties' arguments and the relevant case law, we find that it was permissible for the agency to consider the appellant's 2003 suspension as an aggravating factor but that the passage of time lessens its import. Although none of the case law seems to bar consideration of prior discipline due merely to passage of time, we find that passage of time may go to the weight that the prior discipline should be accorded, along with the severity of the prior discipline and whether the current disciplinary action is being taken for similar reasons. *See Boscoe v. Department of Agriculture*, 54 M.S.P.R. 315, 326 (1992) (noting that the appellant had been suspended "[j]ust six months prior to the offenses involved in this appeal"); *Gleason v. Department of the Army*, 38 M.S.P.R. 547, 549 (1988) (affirming the initial decision in which the administrative judge found that the seriousness of the appellant's offense was greatly aggravated by his recent prior disciplinary record for similar misconduct); *Griffin v. Department of the Army*, 15 M.S.P.R. 738, 740 (1983) (noting that the appellant had been suspended twice within the previous 5 months for the same offense). In this case, we find that the appellant's prior discipline was serious – a 45-day suspension with an explicit warning that it was his "second and <u>final</u> notice that offensive interpersonal interactions will not be tolerated by the Bureau." I-2 AF, Tab 11 at 82, 85. In addition, the prior suspension was based largely on the same general type of behavior underlying the removal at issue here, i.e., inappropriate comments to female coworkers. *Id.* at 83-84. Therefore, notwithstanding the significant passage of time, we agree with the administrative judge that the agency did not abuse its discretion in giving the appellant's 2003 suspension significant weight as an aggravating factor.

¶20    Regarding the remaining penalty factors, although we agree with the appellant that he has had excellent work performance, we do not agree that this speaks strongly to his rehabilitative potential.  PFR File, Tab 1 at 8; *see McCreary v. Office of Personnel Management*, 27 M.S.P.R. 459, 462 (1985) (finding that, although the appellant had good work performance, he lacked rehabilitative potential).  The charged offense does not relate to the appellant's performance in his position, but rather to his interpersonal conduct outside the workplace.  IAF, Tab 7 at 27-28, 31-32.  For the reasons explained in the initial decision, we agree with the administrative judge that the appellant has exhibited poor rehabilitative potential.  ID at 21-23.   In particular, we find the appellant's response to the notice of proposed removal to be disturbing where he suggests that, had the Dairy Queen service worker's mother called him instead of the police, he would have known whether this girl was having issues that were causing her to "engage superfluously" with him and he could perhaps have been recruited as a father figure or "standby babysitter."  ID at 22-23; IAF, Tab 5 at 29, 56.  This response exhibits deflection, denial, and the appellant's latent wish that he could have continued to pursue a relationship with this girl, none of which bode well for his rehabilitative potential.  It also exhibits the appellant's lack of appreciation for the seriousness of his misconduct.  He continues to characterize his actions as "off-duty flirtation," PFR File, Tab 1 at 10, but based on the undisputed facts as set forth in the relevant police reports, his behavior seems more akin to stalking or harassment, a fact that he still does not seem to understand.[4]  IAF, Tab 10 at 85-89.

¶21    In light of all the pertinent penalty factors, including the troubling and repeated nature of the appellant's offenses, their relationship to the appellant's duties and responsibilities, the appellant's multiple warnings about his inappropriate conduct towards women, his status as a law enforcement officer, the

_____

[4] We note that even unwanted "flirtation" does not typically result in the recipient seeking protection from the police, as occurred twice in this case within the space of a few months.

effect of the appellant's conduct on the reputation of the agency and its relationship with the local law enforcement community, the appellant's personal stresses and good performance history, and the deciding official's consideration of the same, we agree with the administrative judge that there is no basis to mitigate the penalty.  ID at 17-24; IAF, Tab 5 at 32-34; *see Douglas*, 5 M.S.P.R. at 306.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:			_____
					Gina K. Grippando
					Clerk of the Board

Washington, D.C.